**Vieta POINTER, Carl Shelton, and James E. Shelton, Plaintiffs-Respondents,**

v.

**Houston WARD and Leatrice Ward Curtis, Defendants-Appellants.**

No. 52782.

Supreme Court of Missouri,
Division No. 2.

May 13, 1968.

Rehearing Denied July 8, 1968.

Bradley, Noble & Morgan, John W. Noble, William B. Morgan, Kennett, for respondents.

Briney, Welborn & Spain, Joe Welborn, James E. Spain, Bloomfield, for appellants.

ALVIN C. RANDALL, Special Judge.

Mr. J. C. Shelton and Leara Shelton were married May 22, 1954. He was 62 years of age and she was 57. They had no children during their marriage, but plaintiffs are Mr. Shelton's children by a previous marriage and defendants are Mrs. Shelton's children by a previous marriage. When they were married, each owned various pieces of real estate. Mrs. Shelton died intestate in June, 1964. Thereafter, Mr. Shelton commenced an action for partition of Mrs. Shelton's real estate holdings, alleging that, as her widower he owned an undivided one-half interest, and defendants, her children, owned the other one-half interest. Defendants denied that Mr. Shelton owned any interest in said land, and set up a counterclaim asserting that Mr. and Mrs. Shelton had made an oral contract at or before the time of their marriage under the terms of which each agreed that each would "have and retain his or her property"; and that when either died, his or her property "should pass and descend directly" to his or her children, "free of any claim whatsoever from the surviving party." Defendants asked the court to enforce said contract by declaring that they are the sole owners of all real and personal property owned by Mrs. Shelton at the time of her death. Mr. Shelton denied said allegations, and also alleged that such an oral contract was not enforceable by reason of various statutes of frauds, relying on §§ 432.010, 451.220, RSMo 1959, and 474.120, RSMo 1965 Supp., V.A.M.S.

Another issue raised by defendants' counterclaim had to do with a note which was payable to Mrs. Shelton and "C. W. Shelton." Defendants asked the court to reform the note by striking the name C. W. Shelton, contending that it was intended that the note should be payable solely to Mrs. Shelton.

Mr. Shelton died in June, 1965, before the case was tried, and plaintiffs, his children, were substituted. The trial court ruled in plaintiffs' favor on all issues, holding that plaintiffs are entitled to a one-half interest in all real and personal property owned by Mrs. Shelton at the time of her death, and the court struck the name "C. W. Shelton," but substituted the name "J. C. Shelton," thereby allowing Mr. Shelton and his heirs to enjoy all the proceeds from said note, since Mr. Shelton was the surviving joint owner thereof. Defendants appeal from the judgment.

Several witnesses testified that Mr. Shelton made statements, at various times between his marriage to Leara and her death, regarding a verbal agreement which they had made. George Riley was interested in buying one of Mrs. Shelton's farms. He mentioned this interest to Mr. Shelton, and Mr. Shelton replied, "I have

nothing to do with her business, her business is hers and her children. We had a verbal agreement when we married that what was mine was mine and my children and what's hers is hers and her children, and all that I married her for was companionship." Witnesses testified that, when Mr. and Mrs. Shelton would make a trip, they would "share" expenses. A witness testified that he borrowed money from Mrs. Shelton, and she told him that he should pay the money to her children if anything happened to her. A carpenter, Ray Hughes, testified that he was asked by Mrs. Shelton to do some work on the home in which the Sheltons lived. He came to the home one day and only Mr. Shelton was present. He asked Mr. Shelton for his opinion with regard to some aspect of the work, and Mr. Shelton replied, "That's none of my business. This is her home, and whatever she wants done to it, that's her business, because when I come here our agreement was that whatever she wanted to do that was her business, and whatever I wanted to do was my business, and our agreement was that if she died what she had went to her children and what I had went to my children." One of the makers of the above mentioned note testified that she always paid the installments to Mrs. Shelton, and if she took the payment to the Shelton home when only Mr. Shelton was present, he would tell her to come back at a later time so she could give it to Mrs. Shelton. Mr. and Mrs. Shelton had a joint bank account at the time of Mrs. Shelton's death, but Mrs. Shelton also had a bank account in her name only. There was other testimony to the effect that Mr. and Mrs. Shelton each managed his or her own property, and there was evidence of statements at various times by Mr. Shelton that "what is hers is hers and what is mine is mine" or "what is hers is hers and her children's and what is mine is mine and my children's." Shortly after Mrs. Shelton's death Mr. Shelton again acknowledged the existence of the oral contract, but said he "had changed his mind," and that the contract was unenforceable.

■ It is quite apparent one or more, if not all three, of the above cited statutes require that a contract of the type on which appellants rely must be in writing if it is to be enforced. Appellants do not disagree with, but tacitly concede, this proposition. However, they state that the obstacle to enforcement created by a statute of fraud is avoided if the contract has been fully performed. But the evidence does not establish full performance, nor even part performance. The evidence recited above may tend to establish the *existence* of a contract, but in no way proved performance thereof. In view of the nature of the promises involved in the alleged contract, it would not be possible for either party to perform the contract, in the sense of doing acts which constitute execution of the contract, until one of them died. And there could never be a situation in which both parties executed the contract, since it is not possible for each to survive the other. However, under the Missouri law, it is possible in very unusual circumstances for a court of equity to enforce an oral contract, despite the statute of frauds, even though the "part performance" relied on by plaintiff are acts which do not constitute actual performance, or execution, of the promises contained in the contract. It is, therefore, necessary that we consider the doctrine of "part performance" as it is applied in Missouri.

■ The legal principles with which we are here concerned, and the manner in which those principles are applied to a factual situation, are discussed in two well considered opinions by this court, Jones v. Linder, Mo., 247 S.W.2d 817, and Rookstool v. Neaf, Mo., 377 S.W.2d 402. For plaintiff to avoid the effect of the statute of frauds and secure the performance by a court of equity of a verbal contract, he

must establish at least[1] three elements: (1) He must prove the performance of acts by him which are cogent evidence of the existence of the pleaded contract. (2) He must prove the terms of the verbal contract by clear, cogent, unequivocal and convincing testimony. (3) He must prove that the acts, referred to in the first mentioned element, were done in reliance on the contract and that, as a result of the acts, the positions of the parties were so changed that to permit the other party to rely on the statute of frauds would result in a grossly unjust and deep-seated wrong, consituting fraud or something akin thereto— sometimes referred to as "virtual fraud, constructive fraud, or equitable fraud." The first mentioned element of a plaintiff's cause of action must be established before the second, and not the other way around. In other words, if the acts allegedly constituting the "part performance" do not, standing alone, constitute evidence of the existence of the pleaded contract, the court may not consider evidence of the terms of the verbal contract. "It is not sufficient that the verbal contract pleaded give color and meaning to acts allegedly performed pursuant to it; the acts performed must first evidence the existence of the pleaded contract." Jones v. Linder, supra, 247 S.W.2d l. c. 820. The only evidence in this case which is even suggestive of part performance is the evidence to the effect that Mrs. Shelton separately managed her separate property. All testimony concerning this fact was coupled with testimony reciting the terms of the alleged verbal contract. Any finding that her acts were done pursuant to a contract would have to result from a "coloring" of her acts by knowledge of the terms of the contract itself. Standing alone, the fact that a person, single or married, manages his own property does not point to, or even suggest, any contract. Section 451.250, RSMo 1959, V.A.M.S., expressly provides that a married woman may control her separate property and enjoy the increase and profits thereof.

Even if the proof had satisfied the first two elements mentioned above, it did not satisfy the third. We have said that there were no acts which constituted part or partial execution of the contract. Anticipatory, preparatory, collateral and ancillary acts, performed in reliance on a verbal contract, generally are not sufficient part performance to call for an exception to the provisions of the statute of frauds; but if the verbal agreement is sufficiently established, the acts are done with the knowledge of the other party, and if the change in circumstances resulting from such acts are of such nature that the consequences thereof are, or may be, disastrous, the court may enforce the contract, even though the acts are not, strictly speaking, in *execution* of the contract. Jones v. Linder, supra, l. c. 825. In this case a failure of the court to enforce the contract would result in no deep-seated wrong, and no disastrous consequences. Mrs. Shelton did not change her position with respect to any of her separate property, either at the time of her oral agreement or later. She was not placed in a situation from which she could not retreat without prejudice to her rights existing at the time of her oral agreement. "There has been no part performance which amounts to anything." Rookstool v. Neaf, supra, 377 S.W.2d l. c. 409.

Appellants rely primarily on the case of Glauert v. Huning, Mo., 290 S.W.2d 126, to support the proposition that the trial court should have enforced the oral contract. In that case Mr. and Mrs. Warmann were married when he was 45 years of age and she was 42. They had no children by that or by any previous marriage. Each owned property and assets acquired prior to their marriage. Using his own assets, Mr. Warmann, at various times, acquired various pieces of real estate, which property was the subject of the law suit. There was testimony relating statements by Mr. and Mrs. Warmann during their marriage to the effect that they had agreed that

---

1. See Watkins v. Watkins, Mo., 397 S.W.2d 603, 609, for other, or more detailed elements.

his property would go to his next of kin after their deaths, and her property would go to her next of kin. However, the deeds taken by Mr. Warmann for the property acquired during the marriage named Mr. and Mrs. Warmann as tenants by the entirety. Mr. Warmann was the first to die; and he left a will which gave Mrs. Warmann $10,000.00, granted her a life estate in all the remaining property, including the real estate, and provided that his property should go to his next of kin upon the death of his widow, but giving her the option to sell any of the property during her lifetime. She accepted all the provisions of the will and at no time made an election to reject the will and take her share as a widow. She rejected offers to buy the real estate, or portions thereof, stating that she wanted to carry out her husband's wishes. However, she took no steps specifically and expressly designed to avoid the legal consequences of the deeds, and the subsequent death of her husband while the two of them were tenants by the entirety. When she died, she left a will leaving all her property to her next of kin, but without describing any property. This court ruled that plaintiffs, Mr. Warmann's next of kin, owned the property, rather than defendants, Mrs. Warmann's next of kin. However, an equitable principle not involved in the case at bar is a sufficient explanation for the judgment in the Glauert case. Plaintiffs' theory was that Mr. Warmann was the equitable owner of the property at the time of his death, despite the fact that legal title was in Mr. and Mrs. Warmann by virtue of the deeds. Equity has power to determine the true intention of the parties from their conduct, and declare the beneficial title to be where the parties intended to place it, even though there are instruments or transactions which, through mistake or other misadventure, would in the usual course of things place the title elsewhere. Martin v. McCabe, 358 Mo. 118, 213 S.W.2d 497, 502. This would seem to be a specific application of the general proposition that equity looks to the substance rather than the form, and will not sanction an unconscionable result mere-

ly because it may have been brought about by means which simulate legality. Weaver v. Jordon, Mo.App., 362 S.W.2d 66, 75, and cases cited. This principle does not attempt to enforce rights flowing from a transaction recognized at law, but for which a court at law offers no remedy. On the contrary, this principle locates and affirms the equitable title, *in spite* of the transaction recognized at law, and in defiance of the legal consequences of such transaction.

The last paragraph of the opinion in the Glauert case, as distinguished from the paragraph containing the judgment, demonstrates that the equitable principle just referred to was the basis, or at least the primary basis, of the judgment. It is there stated that this court in Milligan v. Bing, 341 Mo. 648, 108 S.W.2d 108, " * * * reviewed the law applicable to a case of this nature. It was stated that parol evidence is admissible to show it was not the intention of the parties to create an estate by the entirety even though the deed so recited."

It must be conceded that, earlier in the Glauert opinion, the court used language indicating that it considered the question of whether or not the verbal contract was enforceable, and whether the statute of frauds presented an unavoidable barrier to its enforcement. Therefore, one might infer that there was a secondary basis for the judgment in the Glauert case which would give comfort to appellants in the case at bar.

The facts in the Glauert case, as recited in the opinion, were not sufficient to form a basis for enforcing the verbal contract and avoiding the effects of the statute of frauds. Plaintiffs stood in the shoes of Mr. Warmann. The contract could not be enforced in his favor. He performed no acts which were cogent evidence of the existence of the contract. In fact, his only acts were in having the title made in such a way as to grant a tenancy by the entirety, if we may assume that he was involved in these acts. These acts are inconsistent with the verbal contract, and it is the consequences

of these very acts that plaintiffs were attempting to avoid. It is apparent that Mrs. Warmann's conduct after her husband's death was consistent in all respects with the terms of the verbal contract, but it was also just as consistent with the terms of her husband's will. Mrs. Warmann's actions after her husband's death did not result in a disaster to her in the absence of an enforcement of the verbal contract, nor inflict a deep-seated wrong upon her, not to mention the fact that the plaintiffs were in a position where they would have to claim a deep-seated wrong, not to Mrs. Warmann, but to Mr. Warmann through whom they claimed. And it would be difficult for the plaintiffs in that case to assert that they would suffer a deep-seated wrong, by reason of Mrs. Warmann's acts consistent with her husband's will, absent the enforcement of the verbal contract. Plaintiffs were asking relief consistent with that same will. We do not consider whether or not Mrs. Warmann's actions following the death of her husband could form the basis for a recovery on some theory. But enforcement of the oral contract, despite the statute of frauds, was not justified by the evidence recited in the opinion.

Appellants cite Watkins v. Watkins, Mo., 397 S.W.2d 603, for a statement of general principles, but do not contend that it controls their case. After their brief was printed, they inserted the citation of Wimp v. Collett, Mo., 414 S.W.2d 65. In that case, evidence of the conduct of the husband and wife were considered to assist in determining whether their joint will, which was in writing, was intended to be irrevocable. The statute of frauds was not involved.

■ In the case at bar the appellants alleged that the note made payable to Mrs. Shelton and C. W. Shelton was intended to be made payable only to Mrs. Shelton, and prayed for a reformation. But all of the evidence, including plaintiffs', was to the effect that Mrs. Shelton did not intend that the note be payable to her only, but that she intended that it be made payable jointly to her and to her husband, and expressly instructed the real estate agents to that effect. No witness suggested that he knew anyone by the name of C. W. Shelton, and the inescapable conclusion is that these initials on the note were a mistake. The trial judge properly struck those initials and inserted instead "J. C."

The judgment of the trial court is affirmed.

FINCH, P. J., and EAGER, J., concur.

DONNELLY, J., not sitting.

PER CURIAM.

After the appellants' brief was printed, they added the citation of Wimp v. Collett, Mo., 414 S.W.2d 65. We were somewhat handicapped because we did not know exactly why they thought the case was in point. In our opinion we said:

"In that case, evidence of the conduct of the husband and wife were considered to assist in determining whether their joint will, which was in writing, was intended to be irrevocable. The statute of frauds was not involved."

In their motion for rehearing appellants say "this case [referring to the Wimp case] was a case to specifically enforce an oral contract falling within the provisions of the statute of frauds and the principles of law there involved are applicable to the instant case."

It is true that the Wimp case was an action to specifically enforce an oral contract. The court did not use evidence of the oral contract, and other circumstances, to arrive at the meaning of the language contained in the joint will. Instead, it used the language in the will to support the evidence of an oral contract. 414 S.W.2d 1. c. 71. Therefore, the first sentence of our opinion herein which is quoted above could be misleading.

However, appellants' contention that the statute of frauds was involved in the Wimp case is without merit. There is nothing in the opinion to indicate that there was any claim that the oral agreement should be in writing. An opinion which does not even discuss the statute of frauds cannot be used to support appellants' position in this case.

The other points raised in the motion for rehearing were sufficiently covered in the opinion.