Francis GEGG, Plaintiff-Respondent,

v.

William P. KIEFER, Administrator of the Estate of Joseph P. Kiefer, Deceased, Defendant-Appellant.

No. 44279.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 2, 1983.

Herbert A. Kasten, Jr., Ste. Genevieve, Albert C. Lowes and Thomas A. Ludwig, Jackson, for defendant-appellant.

Raymond B. Roberts, Farmington, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This is an appeal by the administrator of the estate of Joseph P. Kiefer from a court tried judgment ordering specific performance of an oral contract to sell real estate. The suit originated in a two count petition, wherein respondent requested specific performance in Count I of his petition and quantum meruit in Count II. We reverse and remand.

The facts reviewed in the light most favorable to the respondent are as follows: Joseph P. Kiefer and his wife owned a 274 acre tract in Ste. Genevieve County, Missouri. Approximately 70 acres of this tract was farm land. Respondent, Francis "Franco" Gegg, farmed the land as a tenant on a "cash-rent" basis. He had farmed the land on a share crop basis since the 1940's, but changed to the cash-rent arrangement in 1969 or 1970.

In addition to farming, respondent attended to the upkeep of the Kiefer property. He maintained the gravel road, cleaned out the creek bed, cleared brush and weeds, and improved the land's drainage system. Under his care, the farm's productivity increased considerably. Kiefer was pleased with his tenant's work and over the years on unspecified occasions told him, "Now, Franco, you take care of this land because someday it will be your own." When asked for advice about the farm, Kiefer would reply, "Well, you just go do it the way you want because you're doing real good just the way you are."

After his wife's death in January 1979, Kiefer's health deteriorated steadily. The following February, respondent and his brother, Weldon ("Tommy") Gegg, took Kiefer to the hospital. On March 6, 1979, Kiefer left the hospital. Tommy Gegg and his wife Earlene both testified that they had been present the day that Kiefer returned from the hospital, and that he had stated: "Franco, now as soon as I get on my feet ... I want to sell you this farm; as soon as I get on my feet we'll take care of this." When asked how much he could pay for the farm, respondent replied, "Well, Joe ... I can't give you a doctor or a lawyer's price." Kiefer asked what respondent could afford to give. He thought for a while and stated that he could afford $45,000. Kiefer responded, "Well, that sounds good enough to me." The parties discussed neither the time of the sale nor its terms any further.

In March or April of 1979, respondent visited a local banker in order to arrange a $45,000 loan. Respondent told the banker that he was going to buy the Kiefer farm. Also in April, he purchased a new four-row corn planter. He told the dealer that he was purchasing the new equipment because he "thought maybe he was going to be able to keep" the Kiefer property. Additionally, respondent claims that his wife gave Kiefer $400 as an advance to be applied against the purchase price of the farm.

After a short stay at home, Kiefer returned to the hospital. On April 6, one of his legs was amputated. Respondent and his brother regularly visited Kiefer in the hospital and on April 15, 1979, respondent asked Kiefer whether he was ready to sell his property. Kiefer replied yes, indicated that he "had turned everything over" to his nephew, William Kiefer, the appellant, and asked if his nephew had brought the deed to Gegg to which Gegg replied no. This

was the final conversation concerning the sale of the land. Kiefer died intestate on May 1, 1979, having made no plans with his nephew to transfer his property to respondent.

The trial court determined that an oral contract had been made and proved. He ordered appellant to convey the land to respondent. This appeal followed.

Several points of error have been raised on appeal; (1) whether the alleged agreement was sufficient as a contract or was violative of the statute of frauds and not within any of its exceptions; (2) whether all heirs had been properly made parties to the action; (3) whether the testimony of the banker and farm equipment dealer was hearsay; (4) whether the respondent's claims were res judicata; and (5) whether respondent's wife was an interested party within the meaning of the dead man's statute, § 491.010 RSMo (1978). We resolve this appeal in disposing of the first alleged error. Therefore, we need not address the other issues raised.

█ Respondent urges us to believe that the totality of the evidence supported the trial court's finding of an oral contract and was sufficient to overcome the bar of the Statute of Frauds. The Statute of Frauds in Missouri provides:

No action shall be brought * * * upon any contract made for the sale of lands, * * * unless the agreement upon which the action shall be brought * * * shall be in writing and signed by the party to be charged therewith * * *.

§ 432.010 RSMo (1979). An oral contract to convey land falls within the literal ambit of the Statute of Frauds and so will not be enforced at law. *Jones v. Linder,* 247 S.W.2d 817 (Mo.1952); *McKenna v. McKenna,* 607 S.W.2d 464 (Mo.App.1980). However, equity will decree specific performance where a party has so far acted on the promise that to deny him the benefit of the agreement would be unjust. This resort to equity avails sparingly, and only upon clear and convincing proof of a definite agreement. *Watkins v. Watkins,* 397 S.W.2d 603 (Mo.1965). The elements of proof required

by equity for the specific performance of an oral contract to convey real estate were prescribed in *Walker v. Bohannan,* 243 Mo. 119, 147 S.W. 1024, 1028 (1912) and have been uniformly followed since:

(1) the alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract as sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had.

More recent Missouri cases have recognized the legal principal that oral promises to convey real estate may be enforced, where the plaintiff has partially performed, or has done other acts in reliance of such promises, and thereby has changed his position so materially "that to invoke the statute to deny the performer the benefit of the agreement would itself amount to a fraud." *Jackson v. Shain,* 619 S.W.2d 860, 862 (Mo. App.1981), citing *Tuckwiller v. Tuckwiller,* 413 S.W.2d 274 (Mo.1907); *Jones v. Linder,* 247 S.W.2d 817, 820 (Mo.1952). These cases seem to support relaxation of "full perform-

ance," the fifth requirement as set forth in *Walker* above.

■ We proceed to determine whether the evidence supports the existence of an oral contract and further whether the evidence meets the Walker test set out above to support a decree of specific performance, keeping in mind that this equitable action is to be sustained unless there is no substantial evidence to support it. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

■ Respondent's amended petition pleaded that the oral contract was consummated on or about March 6, 1979. However in his brief and in argument, respondent urges us to believe that the evidence supported the trial court's findings of a "two-part" contract. In the first part, respondent claims that the earlier statements made by Kiefer promising that the land would someday be his induced him to make improvements in it. Respondent argues that Kiefer "understood" these statements to be a promise to sell on terms which would be negotiated at a later time. In the second step, respondent claims that Kiefer orally agreed to sell the property in consideration for $45,000 and respondent's past services. Both of respondent's arguments fail.

In regard to Kiefer's early statements, as, "someday it will be your own," or similar import, such statements are too indefinite to constitute the making of a contract. There is no showing as to the time of performance. Normally, where time of performance is not made, such an ambiguity will not defeat specific performance. In such cases, it is implied that performance may be required in a reasonable time. *Wilkinson v. Vaughn,* 419 S.W.2d 1 (Mo.1968). However, such is not this case. In the case at bar, Kiefer's statements occur over a thirty year period. There was no intention by Kiefer to immediately convey the property or to convey it within a reasonable time. Rather his intention was to hold onto the land as long as possible. It is essential to an agreed oral contract subject to specific performance that there be a meeting of the minds upon terms so definite that prom-

ises and performances are reasonably certain and none are in doubt or subject to future ascertainment. The court cannot make a contract for the parties, and, if the agreement sought to be enforced is indefinite, cannot decree specific performance. *Morris v. Pike,* 545 S.W.2d 410 (Mo.App. 1976).

■ Further difficulty with respondent's position is that he attempts to establish the terms of the contract by evidence that he did perform additional services on the farm between 1947 and 1979 without receiving compensation. Performance of the services by respondent as evidenced herein, however, is equally consistent with the rights, duties, and obligations arising under a landlord-tenant agreement as it is with the expectation that decedent would sell his nearly 274 acre farm for a fraction of its value; effectively, a gratuitous transfer. Respondent's improvements and maintenance of the farm, purportedly in "reliance" upon decedent's "promise", were neither extraordinary nor selfless, but reasonably necessary and incidental to successful farm management as a tenant.

Additionally, the good land management by respondent benefited Kiefer, but it also inured to the profit of respondent as tenant. The arable acreage was landlocked. Had respondent not maintained and graveled a road, his access to the tillable tract would have been hampered. The drainage system, crop rotation, weeding, and use of lime, fertilizer and seeds, improved not only the land's value, but also increased the farm's crop yield, again, benefiting respondent. Respondent argues the purchase of a corn planter, a large capital expenditure, was inconsistent with the landlord-tenant relationship. However, respondent had been farming the land on a year to year tenancy, or as a sharecropper, since the 1940's. That respondent, who already utilized crop rotation (evidence of long term planning by him), would invest in equipment for increased productivity accords with the nature of the landlord-tenant relationship that he and Kiefer developed over the years. Respondent's actions were not unequivocal-

ly and solely referable to an alleged contract for sale of realty. *Brassfield v. Allwood,* 557 S.W.2d 674 (Mo.App.1977); *Walker v. Bohannan,* 147 S.W. at 1028. Under the above circumstances, we are unable to conclude that prior to March 6, 1979, respondent and Kiefer contracted for the sale of Kiefer's farm.

■ We now turn to conversations and events between the two parties occuring March 6, 1979 and beyond. The conversation relating to the selling of the farm was definite enough to form a contract and meet the first standard set down by *Walker.* An agreed upon price, $45,000 was established. In addition, the time of performance was reasonably certain. Kiefer had ordered appellant to prepare a deed. In fact, it came as a surprise to Kiefer that respondent had not as yet received the deed to the property. As a result of a definite price, time of performance and method of conveyance all tends to establish the *existence* of a contract, but in no way proved performance thereof. *Pointer v. Ward,* 429 S.W.2d 269, 272 (Mo.1968).

■ Thus, the remaining issue is whether the March 6, 1979 oral contract falls within the claimed exceptions of the Statute of Frauds. For respondent "to avoid the effect of the statute of frauds and secure the performance by a court of equity of a verbal contract, he must establish at least three elements: (1) he must prove the performance of acts by him which are cogent evidence of the existence of the pleaded contract, (2) he must prove the terms of the verbal contract by clear, cogent, unequivocal and convincing testimony and, (3) he must prove that the acts, referred to in the first mentioned element, were done in reliance on the contract and that, as a result of the acts, the positions of the parties were so changed that to permit the other party to rely on the statute of frauds would result in a grossly unjust and deep-seated wrong, constituting fraud or something akin thereto." *Pointer, supra,* pp. 272–273.

■ Respondent failed to establish the three minimal elements. We note that there is no showing of part performance by respondent to require enforcement of the contract. The initial occupancy of the farm by respondent was as a tenant under an oral agreement to pay an annual cash rental and with the obligation to maintain the property. Work performed on the property was necessary to make it productive and as previously stated, such work was self-beneficial. The act of purchasing the corn planter was not dispositive of a specific act arising from the agreement to purchase Kiefers property. At the time of purchase, respondent was farming two additional parcels of land. Furthermore, respondent told the dealer that he only "thought" he was going to keep the Kiefer property. The evidence which revealed that he was arranging to borrow $45,000 from the bank was merely tentative. Anticipatory, preparatory, collateral and ancillary acts, performed in reliance on a verbal contract, generally are not sufficient part performance to call for an exception to the provisions of the statute of frauds; but if the verbal agreement is sufficiently established, the acts are done with the knowledge of the other party, and if the change in circumstances resulting from such acts are of such nature that the consequences thereof are, or may be, disastrous, the court may enforce the contract, even though the acts are not in execution of the contract. *Pointer, supra,* 273. In the case at bar, a failure of the court to enforce the contract would result in no deep-seated wrong, and no disastrous consequences. Respondent's evidence failed to show that he performed any act in reliance on the oral terms which changed his position so materially that to invoke the statute to deny the benefit of agreement would itself amount to fraud. *Walker, supra.* He is in the same position as he was before the contract. The evidence shows no substantial basis for the intervention of equity to enforce the oral promise to convey the real estate. Respondent suffers no injustice by the refusal of the specific performance of the oral agreement to convey the real estate.

Additionally, respondent's claim that his wife had given Kiefer $400 as a partial

payment is without merit. The transcript reveals that she testified that the $400 was given as a gift and not as an advance to be applied against the purchase price. Consequently, respondent's claim that he acted upon such agreement by giving Kiefer $400 is without merit and further he is not entitled to the restitution of the $400.

In the final analysis what the respondent lost was the benefit of the bargain, *Shaffer v. Hines,* 573 S.W.2d 420, 423 (Mo.App.1978) and "to permit recovery . . . for loss of the benefits of a bargain . . . would be to permit a recovery in an action prohibited by the statute of frauds, i.e., an action to '. . . charge any person . . . upon any contract made for the sale of lands, . . . unless the agreement . . . be in writing. . . .' RSMo 1947, § 432.010, V.A.M.S." *Jones v. Linder,* 247 S.W.2d 817, 826 (Mo. 1952).

It is the legislature and not Kiefer that has made the contract in this case unenforceable. We find no basis to remove this case from the operation of the statute of frauds. *Shaffer, supra,* at 423.

The judgment is reversed as to Count I and remanded as to Count II, the quantum meruit claim.

SMITH and KELLY, JJ., concur.