Catherine STRAATMANN,
Plaintiff/Appellant,

v.

Kenneth STRAATMANN and Norma Straatmann,
Defendants/Respondents,

and

Bernadine Thomas and Mike Hinson,
Third Party Defendants.

No. 58540.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 26, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 22, 1991.

Application to Transfer Denied
June 11, 1991.

Judgment affirmed.

Timothy Joseph Melenbrink, Union, for plaintiff/appellant.

William W. Eckelkamp, Washington, for defendants/respondents.

GARY M. GAERTNER, Presiding Judge.

Appellant, Catherine Straatmann, appeals from a judgment entered in favor of respondents, Kenneth and Norma Straatmann, in this bench tried case. The dispute concerns the operation and future disposition of the parties' family farm and can most accurately be described as a family feud; appellant is respondent's, Kenneth Straatmann's, mother. The facts relevant to our decision follow.

In 1935, appellant and her husband, the late Ben Straatmann,[1] purchased a 208 acre farm in Villa Ridge, Missouri, which is located in Franklin County. In addition to farming the land, appellant and Ben raised five children. Kenneth was the youngest of the children, having four older sisters. Some time shortly after Kenneth's graduation from high school, appellant, Ben and Kenneth discussed Kenneth's future. In this meeting, Ben stated that if Kenneth agreed to stay on the farm and help him, then Kenneth would receive the farm equipment and the livestock (cattle) when Ben retired. Also, it was agreed that if Kenneth stayed on the farm, he would receive an equal share of the farm with his sisters when his parents passed away.

Kenneth has remained on the family farm ever since. In 1966, Kenneth wed and thereafter began receiving the proceeds from one portion of the farm. He and his wife, respondent, Norma Straatmann, moved into a small home on the farm. Besides the income from the portion

---

**1.** Hereinafter we refer to Mr. Straatmann as Ben. Respondent, Kenneth Straatmann, will be referred to as Kenneth. We do not intend, by these references, to be disrespectful.

of the farm already mentioned, Kenneth did not receive a salary or wage from his parents.

In 1972, Ben retired and turned over to respondents the cattle, swine, crops and the farm machinery. From that point on, respondents received all of the proceeds generated by the farm and also paid for all of the expenses incurred in its operation. Additionally, in 1972, Ben directed the family accountant to credit respondents with the depreciation in the value of the cattle and livestock and, in 1973, the same was done regarding the farm machinery. Ben died in 1973.

After 1973, respondents continued to run the family farm, paid all of the farm expenses and collected all of the farm revenue. Respondents financially assisted appellant, who still lived in the family's home. This arrangement continued peacefully until 1982.

In 1982, Kenneth and his nephew, Mike Hinson, began fighting. Apparently, appellant sided with Hinson.[2] Kenneth, frustrated with Hinson, began to move some of the farm equipment that was located on appellant's property to his property. In May of 1983, Kenneth also sold all of the cattle and kept the proceeds. On July 25, 1983, appellant prepared a quit-claim deed which conveyed the farm to her for life and the remainder was deeded to Kenneth's four sisters. On August 22, 1983, appellant filed a four count petition against respondents, seeking the recovery of various items of farm equipment of which respondents had possession, and also seeking damages for the respondents' alleged conversion. Appellant also sought damages for her share of the sale of the cattle, damages for the respondents' alleged dumping of trash upon appellant's property and an injunction prohibiting respondents from dumping trash on appellant's property and from trespassing on her property.

For their part, respondents' answer contained two counterclaims. Respondents

sought the recovery of the farm implements which appellant had in her possession including damages for appellant's wrongful detention of them. Respondents also sought to be declared the owner of a John Deer combine and a John Deer ten foot disk, which they alleged appellant was claiming as her own. Respondents' answer also contained a third party petition which sought the recovery of an air compressor and ditch digger from Bernadine Thomas, Kenneth's sister, and sought damages for an alleged assault by Hinson. Respondents later filed a first amended counterclaim which sought specific performance of the oral contract regarding the farm, requesting that the court order appellant to reconvey the title to the farm in a manner which would not deprive Kenneth of the one-fifth share that he was promised in 1961.

This seemingly complicated family dispute, for our purposes, really concerns whether appellant or respondents own the farm equipment and whether appellant had the power to divest respondent of his future interest in the farm, notwithstanding the contract. Both of these questions rely on the validity of the oral contract itself.

The trial court found that respondents were the rightful owners of all of the equipment in dispute and ordered appellant to deliver the equipment in her possession to respondents. The court further found that an oral contract was formed in 1961 between appellant, Kenneth and Ben pertaining to the family farm. The court then ordered appellant to place the real estate back into her name only and to refrain from taking steps in the future which would defeat Kenneth's rights to a one-fifth share of the farm.

Appellant's appeal encompasses five points relied on which, in actuality, present two questions for our review. First, whether the trial court properly found sufficient evidence to prove the existence of the oral contract to remove the contract

---

**2.** Hereafter we will refer to Mike Hinson as Hinson. We do not intend by this reference to be disrespectful. We also note that the respondents' claims against Hinson for damages are

still pending below and, for this reason, we decline to recite any facts regarding their disagreements. Those facts are not necessary to the resolution of this appeal.

from the statute of frauds. Second, whether, based on the same oral contract, the trial court erred in finding that the equipment belonged to appellant.

 The disputed agreement was an oral contract to convey land which falls squarely within the statute of frauds, and will not be enforced at law. *Gegg v. Kiefer*, 655 S.W.2d 834, 837 (Mo.App., E.D. 1983); RSMo § 432.010 (1986). However, upon clear and convincing proof of the existence of such a contract, equity will provide specific performance where a party has acted to such an extent upon the promise that to deny him the benefit of the agreement would be unjust. *Gegg*, 655 S.W.2d at 837. The elements of proof necessary to invoke this equitable doctrine were prescribed in *Walker v. Bohannan*, 243 Mo. 119, 147 S.W. 1024 (Mo.1912) and are as follows:

(1) the alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract as sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made

before the acts of performance relief upon were had.

*Walker*, 147 S.W. at 1028. See also *Gegg*, 655 S.W.2d at 837. Appellant alleges that none of the first seven elements have been proven. The type of promise involved in the present case is not particularly unique and, rather than refute each of appellant's claims in seriatim, we will analyze the case using two earlier Missouri Supreme Court actions.

In *Watkins v. Watkins*, 397 S.W.2d 603 (Mo.1965), the plaintiff's mother died in 1919, when plaintiff was fifteen years old. Plaintiff then quit school to help her father raise the younger children. In 1922, the family moved to Missouri and, in 1934 plaintiff's father purchased 93 acres of Missouri farm land. *Id.* at 605. Plaintiff claimed that, some time after this purchase, her father, in consideration for her quitting school, helping to raise the younger children and for her continuing to help her father, promised that he would convey by deed or by will the property he acquired in Missouri. *Id.* at 606. Over the years, plaintiff's father bought more real estate, but the deeds were never properly prepared and he died intestate. *Id.*

In rejecting many of the same arguments that appellant brings to our attention, the Supreme Court held that the oral contract was sufficiently definite even though, as here, the specific time of the agreement was not stated and even though the agreement was entered into twenty-nine years before her father died. *Id.* at 610. In our case, at most, twenty-two years passed from 1961 until 1983, the date appellant executed her deed contrary to the contract.

*Watkins* also stated that the plaintiff's agreement to remain on the farm to help her dad was adequate consideration despite the fact that it appeared that she wanted to remain at home and, thus, was not induced to stay by her father's promise. *Id.* The Supreme Court noted that plaintiff expected her father to carry through with his promise. Additionally, the court pointed out that, in 1934, the plaintiff was 31 years old and, by agreeing to remain on the farm,

she relinquished her right to leave her father to pursue her own life. *Id.* at 610–11. The court found that such conduct was referable to the contract. *Id.*

The above aspect of *Watkins* is peculiarly applicable to the case at bar where respondent, just after graduating from high school, was asked to forego any desires of striking out on his own in order to help take over operation of the family farm. Regardless of whether that was his wish, it would not necessarily cause the contract to lack consideration. *Id.* at 610.

In *Mills v. Bergbauer,* 452 S.W.2d 237 (Mo.1970), the plaintiff married in November of 1946 and lived with his wife some miles away from the family farm. While plaintiff and his wife were visiting plaintiff's father, his father promised that, if plaintiff and his wife would move to the family farm and take care of him for the remainder of his life, he would will and divise the farm, consisting of some 843 acres, to the plaintiff and his wife. *Id.* at 237. In February of 1947, plaintiff and his wife moved to the family farm and complied with their part of the bargain until 1956 or 1958 when they were forced to move away. *Id.* at 239. Plaintiff's father did not will the property to them.

The Missouri Supreme Court upheld the trial court's grant of specific performance in favor of plaintiff. The case at bar seems to be more compelling given the fact that in *Mills,* the plaintiffs did not appear to follow through with their promise to help plaintiff's father until his demise. In our case, it is clear that respondent remained on the farm and has fully complied with his part of the bargain.

Appellant, in our case, strenuously argues that the evidence does not show that appellant agreed to the oral contract or that she was even present when Ben made the offer. We have read the entire transcript and note that Kenneth consistently stated that appellant was present that day in 1961. Moreover, appellant, during cross-examination, admitted that such an understanding existed.

Lastly, we note that *Walker's* fifth element, full performance, has been relaxed in recent years to require only partial performance upon the party seeking the benefit of the oral contract, where the party has so materially changed his position that the use of the statute of frauds to deny enforcement of the agreement would, itself, amount to a fraud. *Gegg,* 655 S.W.2d at 837. In the case at bar, respondent, now some 47 years old, has spent 29 years in furtherance of his obligation under the oral contract. The entire record below supports the trial court's judgment finding clear and convincing evidence of the existence of the oral contract. Point denied.

■ Appellant also attacks the court's judgment which, in effect, declared that all of the farm equipment belonged to respondents. Appellant claims that all of the items, except the John Deere combine and ten foot disk, were located on her property and that Kenneth failed to prove the existence of the oral contract which provided that he would be entitled to the equipment and the cattle upon Ben's retirement. We have already analyzed the existence of the oral contract, hopefully not ad nauseum, and will not repeat it here. The John Deere combine and the ten foot disk were also farm equipment, but were stored on Hinson's property.

Appellant also correctly points out that an agreement which cannot be performed within one year is subject to the statute of frauds. RSMo § 432.010. However, appellant's reliance on the statute is misplaced.

The statute of frauds does not apply to contracts which have been fully performed by one of the parties. *Leh v. Dyer,* 643 S.W.2d 65, 68 (Mo.App., E.D.1982). The agreement regarding the equipment appears to have been fully complied with in 1972, upon Ben's retirement.

There was substantial evidence that respondent Kenneth was fully in charge of the farm after 1972, which is bolstered by the evidence that the depreciation of the equipment was transferred from Ben to respondents.

■ We also point out that the instant contract was capable of being performed within one year. The oral contract re-

quired respondent to work on the farm only until Ben retired and, at that time, respondent would have been entitled to the equipment used in the farming operations. Further, the contract provided that, if respondent continued to work on the farm until Ben and appellant's death, respondent would receive a one-fifth share of the farm. It was possible that Ben could have retired and both Ben and appellant could have died within one year from the date of the oral contract, thus, taking it out of the statute of frauds. *Leh,* 643 S.W.2d at 68.

We do not find the court's judgment declaring respondents to be the owners of the equipment and granting their counterclaim in replevin as error. The judgment of the court is affirmed in all respects.

CRANDALL, C.J., and CRIST, J., concur.