In re the **ESTATE OF Charles E. CONKLE, Deceased.**

**Jeffrey L. Conkle, Petitioner–Respondent,**

v.

**Delaura M. Conkle, Respondent–Appellant.**

**No. 21881.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 30, 1998.

---

Donald W. Ingrum, Ingrum, Wilson, Clark, Griffin & Akers, L.L.C., Branson, Attorney for Appellant.

W.A. Dillow, III, Dillow, Spears & Eighmy, L.L.C., Branson, Attorney for Respondent.

PHILLIP R. GARRISON, Chief Judge.

Jeffrey L. Conkle, the personal representative of the estate of Charles E. Conkle ("Husband"), filed an action for discovery of assets against DeLaura M. Conkle ("Wife"). Wife appeals from an adverse judgment entered by the trial court. We reverse.

Husband and Wife each had two children from prior marriages. Husband filed a suit for dissolution of marriage which was pending when he died on April 17, 1996. Knowing that Husband had a terminal illness, his attorney attempted to resolve the dissolution case, in particular as it related to a condominium owned by Husband and Wife as ten-

ants by the entireties. The efforts of Husband's attorney were primarily directed at obtaining Wife's signature on a warranty deed which would convey the condominium to Husband's two children and Wife's two children, as tenants in common, with a life estate in Wife. Husband died from his illness, however, before those efforts were realized.

At trial, Husband's attorney testified that Husband gave him authority to settle the dissolution action by conveying the condominium as described above and dismissing the suit with prejudice. On March 29, 1996, Husband's attorney faxed a letter to Wife's attorney informing him that Husband was terminally ill and thus he intended to get the case heard before Husband's death, and stating the following:

> I believe I could get my client to agree to the following settlement if it were acceptable to your client; both parties would sign a Deed conveying half interest to each of their respective children while reserving a life estate for [Wife] in the condominium. [Husband] would not push the divorce and [Wife] would receive any death benefits that she is entitled to under social security as a spouse of [Husband]. In the event that this is not agreeable by [Wife], I will ask the Court to divide the marital property and upon the granting of divorce, it is my understanding that she will not receive the death benefits and social security payments of [Husband].

Apparently, Husband's attorney prepared a warranty deed, which was signed by Husband on April 2, 1996 which would convey the condominium to Husband and Wife's respective children, in equal shares, with a life estate in Wife. On that same day, Husband's attorney sent an unsigned copy of the deed to Wife's attorney "for [his] review," and told him that Husband had been admitted to the hospital that day. On April 5, 1996, Husband's attorney sent the original deed, signed by Husband, to Wife's attorney, saying, "I would ask you to have your client to execute and we will agree to dismiss the pending situation." On April 11, 1996, Husband

signed a "Dismissal With Prejudice" of the dissolution action which his attorney retained in his file. On April 13, 1996, Husband's attorney faxed another letter to Wife's attorney, inquiring whether Wife was going to sign the deed, and asking that he be notified if she did not plan to sign it so that he could get an "emergency" trial setting. Husband's attorney testified that, as of that time, no agreement had been reached.

The attorneys for the parties spoke by telephone on April 15, 1996, at which time, according to Husband's attorney, Wife's attorney brought up the subject of the insurance that covered a car as well as the condominium. He indicated that if the premiums for those coverages had been paid for the year, he thought that Wife would sign the deed. According to Husband's attorney, it was his understanding from that conversation that if the insurance premiums "were paid then there was a settlement." In another portion of his testimony, Husband's attorney testified that Wife's attorney had told him that the insurance premiums had not been paid and that "he thought if those two things were paid that this matter could— could be taken care of and settled."

On April 17, 1996, Husband's attorney faxed another letter to Wife's attorney informing him of Husband's death, and reciting his understanding that the two attorneys had reached an agreement in their earlier telephone conversation that if the insurance premiums were paid, Wife would sign the deed. The letter stated that Husband had told his attorney that he was willing to pay the insurance premiums, and that he had already written the checks, but because of his failing health, he could not remember where he had placed them. The attorney further stated that he was then in possession of checks for the insurance premiums, and that he would forward them to Wife's attorney when she signed the deed.[1] The letter concluded:

> It seems to me that this is a very simple matter. You and I verbally agreed that this deed would be executed at such time as we had checks for the payment of the

---

**1.** The checks for the insurance premiums which came into the possession of Husband's attorney were written by one or more of Husband's chil-

dren. According to the testimony of Husband's attorney, these checks were not in his possession prior to Husband's death.

insurance. We have those checks. Granted, [Husband] is deceased, however it does not seem fair, right or proper to deprive his children of his half of the estate simply because [Husband] was not in a lucid state and able to direct people to where his checks were put.[2]

Husband's attorney testified, however, that Wife's attorney never furnished him anything in writing saying that they had settled the matter, he did not dismiss the dissolution case, and the checks for the insurance premiums were never delivered to Wife or her attorney.

Wife's attorney testified that, from their standpoint, they were negotiating for the payment of the insurance premiums, not for the promise to pay them or their payment sometime in the future. Since that was not accomplished, he said that they "never came to, in my opinion, a completed deal."

The personal representative of Husband's estate filed this action for discovery of assets, alleging that Husband and Wife had, prior to Husband's death, "effectuated a settlement of the ... dissolution proceedings," the terms of which provided that the condominium would be conveyed in the manner described earlier in this opinion. The suit also alleged that Husband had signed the deed conveying the property prior to his death, but died before it was signed by Wife, and that Wife had since refused to execute the deed. It sought an order that Wife be required to sign the deed, and that Husband's estate and his two children be declared the owner of an undivided one-half interest in the property.[3]

In her answer, Wife denied that a settlement had been reached prior to Husband's death, and alleged, among other things, that the claim was barred by the Statute of Frauds in that there was no writing evidencing any such settlement. After a non-jury trial, the court entered a judgment finding that the attorneys for Husband and Wife had entered into a settlement agreement prior to Husband's death; that the settlement called for the condominium to be conveyed to Husband's two children and Wife's two children, as tenants in common, with a life estate reserved in Wife, for Husband to pay $783 in insurance premiums, and for Husband to dismiss the dissolution action with prejudice; that the settlement agreement was binding on the parties; and that prior to his death, Husband, "to his detriment," signed the deed and executed the appropriate pleading to dismiss the dissolution action. The court ordered Wife to execute the deed, and it ordered the estate to pay Wife $783 within ten days of the judgment. Wife appeals.

■ The standard of review of a court-tried case is established by Rule 73.01(c). As interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), that Rule requires that a judgment be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. We are to give considerable deference to the evidentiary and factual evaluations by the trial court. *In re Marriage of Fry*, 827 S.W.2d 772, 775–76 (Mo.App. S.D.1992). However, no such deference is given where the law has been erroneously declared or applied. *Id.*

Wife's first two points on appeal raise issues concerning the Statute of Frauds and will be considered together. She first contends that the trial court's order requiring her to sign the deed was barred by the Statute of Frauds since neither she nor her attorney signed a writing agreeing to do so. Secondly, she contends that the following acts by Husband prior to his death did not remove the bar of the Statute of Frauds, to wit: execution of the deed and delivery of it to Wife's attorney; execution and retention

---

2. Husband's attorney testified that Husband's children came to his office shortly after his death on April 17, 1996, and he instructed them to go to the insurance agency and pay the premiums on the car and condominium. They attempted to do so, but the insurance agency refused the payments because Husband was then deceased and the policies were in his name.

3. No issue is raised about whether this is a "discovery of assets" case, or whether the personal representative, in that capacity, can properly file this action.

in the files of his attorney of a dismissal with prejudice of the dissolution action; and writing, but retaining, checks for the payment of the insurance premiums on the car and the condominium.

■ The Statute of Frauds, § 432.010, RSMo.1994, provides that no action shall be brought to charge any person "upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them" unless the agreement upon which the action rests is "in writing and signed by the party to be charged." A compromise settlement is a contract, and must be in writing if the subject matter is within the Statute of Frauds. *Sappington v. Miller*, 821 S.W.2d 901, 903 (Mo.App. W.D.1992). An oral contract to convey falls within the literal scope of the Statute of Frauds. *Id.*

■ The points relied on define the issues for resolution on appeal. *Amyx v. Collins*, 914 S.W.2d 370, 373 (Mo.App. S.D.1996). Here, Wife does not raise an issue in her points relied on about whether there was, in fact, an agreement reached between the attorneys to settle the dissolution case. Likewise, the parties agree that there was no written manifestation of the agreement, and therefore, at least impliedly agree that it comes within the Statute of Frauds. The real issue here, however, is whether Husband's acts, as found by the trial court, were sufficient to permit the trial court to enforce the agreement, regardless of the fact that it was not reduced to writing.

■ Although the Statute of Frauds ordinarily bars enforcement of an oral contract to convey land, equity may, in some circumstances, require performance of such an agreement to prevent a fraud. *Lederle v. Lederle*, 916 S.W.2d 423, 428 (Mo.App. E.D. 1996). To qualify for the exception, the party seeking enforcement of the contract must, at least, prove: (1) the performance of acts which constitute cogent evidence of the existence of the pleaded contract; (2) the terms of the contract by means of clear, cogent, unequivocal, and convincing testimony; and (3) such a change in the party's position as a result of the acts done in reliance on the contract, that to permit the other party to rely on the Statute of Frauds would result in a grossly unjust and deep-seated wrong, constituting fraud or something akin to it. *Pointer v. Ward*, 429 S.W.2d 269, 272–73 (Mo.1968). The exception, however, is rigidly scrutinized and sparingly invoked so that "relief will be denied if there is doubt as to whether there has been a meeting of minds or full understanding of the terms sought to be enforced." *Lederle*, 916 S.W.2d at 428.

The trial court found that Husband and Wife had agreed that the condominium would be conveyed as called for in the deed; that Husband would dismiss the dissolution action; and that Husband would pay the insurance premiums on the car and condominium. It also found that Husband, to his detriment, abided by the terms of the settlement by signing the deed as well as the "pleading" to dismiss the dissolution case, and that the failure to pay the insurance premiums did not "void the settlement."

If the personal representative was relying on the execution and forwarding of the deed, or execution of the dismissal, as sufficient performance to avoid the bar of the Statute of Frauds, it was incumbent on him to establish, among other things, that the acts were solely referable to the contract. *Lederle*, 916 S.W.2d at 428; *Jackson v. Shain*, 619 S.W.2d 860, 862 (Mo.App. W.D.1981). Said another way, "the acts must have been done in reliance on the contract...." *Ahrens v. Dodd*, 863 S.W.2d 611, 614 (Mo.App. E.D.1992); *Jackson*, 619 S.W.2d at 862.

■ In the instant case, Husband signed the deed on April 2, 1996, and it was sent to Wife's attorney on April 5, 1996. The "Dismissal With Prejudice" was signed by Husband on April 11, 1996, but was never delivered to Wife's attorney or filed with the court. Husband's attorney admitted in his testimony that he did not believe that there was an agreement as of April 12, 1996 when he wrote Wife's attorney asking if Wife was going to sign the deed. In fact, Husband's attorney testified that he did not believe a settlement agreement was reached until April 15, 1996 when he had a discussion with Wife's attorney about the payment of insurance premiums. Therefore, when the deed was signed and forwarded to Wife's attorney,

and when the dismissal of the action was signed, there was no settlement agreement in place. At most, Husband's attorney was in hopes that one could be developed. Since no agreement had been reached when the deed was signed and delivered, or when the dismissal was signed, those acts could not have been done in reliance on the settlement agreement, as it did not then exist. It is· clear that the two acts found by the trial court to have been committed in reliance on the agreement were nothing more than attempts to induce such an agreement.

 Furthermore, in applying the exception to the bar of the Statute of Frauds, it is also required that, as a result of the acts, the positions of the parties were so changed that to permit the other party to rely on the Statute of Frauds would result in a grossly unjust and deep-seated wrong, constituting fraud. *Pointer v. Ward,* 429 S.W.2d at 273. The personal representative has not demonstrated how there was such a change of positions here. The dissolution action was not dismissed with prejudice. (*See Sappington,* 821 S.W.2d at 904, where the court found that actual dismissal of a suit with prejudice was a material change of position in reliance on an agreement so that gross injustice could be avoided only by enforcement of the agreement.) The deed, although never signed by Wife, was obviously signed by Husband knowing, or at least believing, that his death was near. It would have conveyed the condominium property to the persons Husband apparently wanted to own it after his death, as opposed to Wife who, upon his death, would be the surviving tenant by the entirety. Under these circumstances, it is difficult to fathom how the delivery of the deed, by which Husband was attempting to achieve his desires, materially changed his position so that failure to order it signed by Wife would result in a gross injustice or fraud.

We hold that the trial court's judgment was not supported by substantial evidence and constituted an erroneous application of the law. The judgment is, therefore, re-versed. Because of this result, we need not review Wife's other two points on appeal.

MONTGOMERY, J., and SHRUM, P.J., concur.