# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4150

_____

| | | |
|---|---|---|
| Visiting Nurse Association, St. Louis; Visiting Nurse Association of Greater St. Louis, formerly known as Visiting Nurse Association Home Health Care; Visiting Nurse Association Hospice Care; VNA Services Corporation, | * * * * * * * * | |
| Appellants, | * * | |
| v. | * * | Appeal from United States District Court for the Eastern |
| VNAHealthcare, Inc.; VNA Homecare, Inc.; Visiting Nurses Hospice; VNA Privatecare, Inc.; VNA Private Duty, Inc., | * * * * * | District of Missouri. |
| Appellees. | * | |

_____

Submitted: September 10, 2003

Filed: October 27, 2003 (corrected 11/3/03)

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The Visiting Nurse Association of St. Louis (VNASL) appeals from a judgment denying its prayer for an injunction on various state claims of trade name infringement against VNAHealthcare, Inc. (VNAH). The district court denied relief after finding that the asserted trade name was generic and therefore not legally protected. Before this ruling, the district court refused VNASL's request to enforce a purported settlement agreement between the parties on the ground that the parties had not reached a "meeting of the minds." We find that the parties did indeed make a contract, and we therefore vacate the district court's judgment and remand the case with instructions to enforce the settlement agreement.

I.

The substantive law of the state of Missouri, which includes its law respecting the proper burden of proof, is applicable in this diversity case. *See Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446-47 (1959)*; Bamirilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992), *cert. denied*, 506 U.S. 867 (1992). Therefore to determine whether the parties entered into an enforceable settlement agreement we look to Missouri principles of contract formation, *see L.B. v. State Committee of Psychologists*, 912 S.W.2d 611, 616 (Mo. Ct. App. 1993), and we require VNASL to present "clear, convincing and satisfactory" evidence that there was an agreement before specific performance will be ordered, *see Randall v. Harmon*, 761 S.W.2d 278, 278 (Mo. Ct. App. 1988); *see also Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251-52 (8th Cir. 1996).

In this case, the parties entered into settlement negotiations and arrived at an apparent oral agreement, but almost immediately thereafter (and before the apparent agreement was committed to writing) several disputes arose. The ones involved in this appeal have to do with how long VNAH would be required to carry a disclaimer of any connection with VNASL on its printed materials, when it would be required

to begin using the disclaimer, and whether the disclaimer requirement extended to materials not used within VNASL's "Trade Area."

As the district court recognized, an oral agreement is unenforceable if the parties did not intend to be bound by it until it had been reduced to writing. Any such intent, however, must be clear. For example, the law will not imply the necessity of a writing simply because the parties clearly intend to memorialize their agreement later. *See Byrd v. Liesman*, 825 S.W.2d 38, 39-41 (Mo. Ct. App. 1992). Although the district court briefly discussed this issue, it concluded that it was unnecessary to reach it.

Looking at the record of the parties' negotiations, we hold that it would have been clear error for the district judge to have found that there was an intent to delay the legal effect of the agreement. When the parties completed their original oral negotiations, they thought that they had reached an agreement, and they contacted the district court to cancel a pending hearing because they believed that the case had been settled. There is simply no evidence in the record tending to show an intent to delay the effect of the agreement until a writing was executed.

Following the language used in the district court's opinion, on appeal the parties focus their arguments on whether the parties had accomplished a "meeting of the minds," a phrase that, despite its capacity to confuse, has proved difficult to eradicate from discussions of contract law. On its face, it can create the impression that a contract is formed only when the parties to it entertain the same subjective views as to its meaning. That, however, is not the law. *Cf. Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814-15 (7th Cir. 1987). Rather, a court looks to the parties' objective manifestations of intent and interprets those manifestations as a reasonable person would. *See McDaniel v. Park Place Care Ctr., Inc.*, 918 S.W.2d 820, 827 (Mo. Ct. App. 1996). If those manifestations produce a reasonably ascertainable objective meaning, an enforceable agreement exists.

Although the district court held that the agreement contained fatal ambiguities, we respectfully disagree. Under Missouri law, an agreement is actionable if it is specific enough to determine when one of the parties is in breach and provides a basis for giving a remedy. *See Olgive v. Olgive*, 487 S.W.2d 40, 41 (Mo. Ct. App. 1972); *accord. Restatement (Second) of Contracts* § 33(2). We see nothing in the provisions of this agreement that would make it impossible to determine if they were violated. According to the district court's factual findings, which the parties do not dispute, they orally agreed that VNAH's use of the disclaimer was a "condition to the use of this name [VNA] within [VNASL's] Trade Area." We find that the meaning of this provision is perfectly clear: The disclaimer must be used whenever VNAH does business in a particular area, using a particular name. Under the agreement, therefore, VNAH could be rid of its obligation tomorrow simply by ceasing forever to operate within VNASL's "Trade Area" or by changing its name to "Nurses Who Visit [NWV] Healthcare, Inc." VNAH also maintains that the contract was fatally ambiguous as to the date on which the obligation to disclaim was to begin. There is no dispute, however, that the parties orally agreed that the name change (VNAH was to become "VNA TIP HomeCare"), which triggered the obligation to disclaim, was to be effective January 1, 2002, a date which seems to have left VNAH with a large quantity of unused stationery, but which is nevertheless about as clear as it could be.

The district court also found that the disclaimer was limited to "stationary, [sic] literature, business cards, forms and promotional materials used within the Trade Area," a provision that excludes printed materials used outside of the "Trade Area." Again, the parties do not dispute this finding. It is true that the parties did not agree to the precise fate of VNAH's website, but this is an ancillary matter that can be resolved by a construction of the term "promotional materials used within the Trade Area." The meaning of an agreement need not be completely crystalline before it can be enforced. Many contracts require construction, and the very idea of ambiguity is itself necessarily a little fuzzy around the edges.

VNAH may now be unhappy with some or all of the terms just discussed, but the fact that a party decides after the fact that a contract is not to its liking does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation. *See Worthy v. McKesson Crop.*, 756 F.2d 1370, 1373 (8th Cir. 1985) (per curiam). We hold that the agreement was not fatally ambiguous.

II.

VNAH maintained below that even if an otherwise valid contract was formed, it is not actionable under the Missouri statute of frauds, *see* Mo. Rev. Stat. § 432.010, the relevant section of which provides that "[n]o action shall be brought ... upon any agreement that is not to be performed within one year from the making thereof" unless it is in writing. VNAH argued that because the settlement agreement contemplates performance over a period of more than a year, it is within the statute.

Few pieces of legislation have survived as long as the statute of frauds, but there is perhaps no other statute that has been subject to such relentless narrowing by the courts. Missouri, for instance, follows the familiar rule that any contract that can hypothetically be performed within a year is without the statute, no matter how fanciful the possibility of performance may be. *See Crabb v. Mid-American Dairymen, Inc.*, 735 S.W.2d 714, 715-16 (Mo. 1987). So if an otherwise unbounded obligation contains a limiting condition that could conceivably occur in less than a year, the contract is not within the statute. *See Straatmann v. Straatmann*, 809 S.W.2d 95, 99-100 (Mo. Ct. App. 1991). Here, it is possible that VNAH could withdraw from VNASL's "Trade Area" tomorrow, never to return. The agreement is conditioned on doing business within the "Trade Area," and thus VNAH's obligation would be completely performed if it withdrew from doing business in that area for good. Given that we can imagine VNAH's immediate and complete performance of the contract, we cannot say that the contract is within the statute of frauds.

## III.

For the reasons indicated, we vacate the district court's judgment and remand the case with instructions to enforce the settlement agreement.

_____