Ruth SHUMATE, Anna Lee Cornelison, Ruby McFall, Ben Denney, Sherman Denney and Lonnie Denney, Plaintiffs–Appellants,

v.

Loetta DUGAN, Katrina Dye and Lyle Hartley, Defendants–Respondents.

No. 20750.

Missouri Court of Appeals, Southern District, Division One.

Oct. 22, 1996.

Motion for Rehearing or Transfer Denied Nov. 12, 1996.

Larry G. Luna, Branson, for appellants.

Randy R. Cowherd, Tamara Flikkema de Wild, Schroff, Glass, & Newberry, P.C., Springfield, for respondents.

PER CURIAM.

Appellants Ruth Shumate, Anna Lee Cornelison, Ruby McFall, Ben Denney, Sherman Denney, and Lonnie Denney (Plaintiffs) are six of seven heirs at law of Ethel Hartley (Ethel) deceased. Their father was Ethel's first husband, B.F. Denney. Plaintiffs sought to partition their mother's undivided one–half interest in 81.25 acres of land (the Hartley Farm) located in Douglas County, Missouri.[1]

Respondents Loetta Dugan and Katrina Dye (Defendants), are the daughters of Ethel's second husband, Lyle Hartley. Loetta Dugan (Loetta), the seventh heir at law of Ethel, and Katrina Dye (Katrina), Loetta's half–sister from Lyle's former marriage, counter-claimed and requested that the trial court vest title in them as to Ethel's one–half undivided interest in the Hartley Farm.

Defendants assert that Ethel and Lyle had entered into an oral agreement whereby Ethel, during her lifetime, would deed an 80 acre tract of land located in Douglas County, Mis-

---

1. The decedents Ethel Hartley and Lyle Hartley are designated as Ethel and Lyle for purposes of clarity only. We, likewise, designate the Defendants Loetta Dugan and Katrina Dye by their respective first names for purposes of clarity only. We mean no disrespect.

souri, (the Denney Farm) to her first husband's children (Plaintiffs herein), and Lyle's two children (Defendants herein), would be willed the Hartley Farm, i.e., the 81.15 acres in contention herein.

Defendants also pled that at Lyle's death Ethel promised Defendants that they would receive full title to the Hartley Farm. Defendants asserted that they relied on these representations by Ethel and "did not probate the Last Will and Testament of Lyle Hartley" nor had their names placed on the deed to the Denney Farm that Ethel made to Plaintiffs. Therefore, Defendants assert Plaintiffs should be estopped from denying the promises Ethel made to the Defendants that Defendants would receive full title to the Hartley Farm.

In its judgment, the Circuit Court of Douglas County, Missouri, denied Plaintiffs' partition action and instead granted Defendants the title to Ethel's one-half interest in the Hartley Farm.

Plaintiffs raise two points of error.

In their Point One, Plaintiffs assert that the trial court erred when it recognized an alleged oral agreement between Ethel and Lyle because it was not in writing and was contrary to §§ 432.010 and 451.220, RSMo 1978. Therefore, the alleged oral agreement was barred from enforcement by the trial court.

In their Point Two, Plaintiffs argue that there was insufficient evidence to support the "estoppel element of reliance", in that Ethel and Defendants' failure to probate Lyle's will was due to their uninformed and mistaken belief of the law; further, there was not sufficient evidence to establish that the Defendants were offered a share of the Denney Farm.

## I.

Lyle and Ethel were married on September 29, 1955. At the time of his marriage to Ethel, Lyle owned 81.25 acres of real property (the Hartley Farm). Ethel separately owned 80 acres of real property located in Douglas County, Missouri, (the Denney Farm), that she had acquired during her marriage to B.F. Denney.

The Hartley Farm remained separately titled in Lyle's name at the time of his death on March 15, 1992.

Ethel died on April 27, 1994. She had not remarried.

On October 7, 1985, Lyle made a will leaving the Hartley Farm to Defendants, and reserving a life estate to Ethel.[2] Ethel did not make a will at the same time.

In November 1990 Ethel and Lyle executed a warranty deed conveying the Denney Farm to the Plaintiffs.

After Lyle's death, his will was never admitted to probate and no letters of administration were granted. His will was found in his lock box by Loetta after Ethel's death.

## II.

Because Lyle's will was never submitted for probate the Hartley Farm passed through the laws of intestate succession to Lyle's heirs at law, Loetta and Katrina. *See* § 474.010, RSMo 1986 and § 473.070, RSMo Cum.Supp.1989. Thus, Ethel received a one-half undivided interest in the Hartley Farm and Loetta and Katrina each received an undivided one-fourth interest in the Hartley Farm.

Ethel died intestate. Under the laws of intestate succession, Ethel's seven children, the six Plaintiffs and Loetta, were otherwise entitled to share in Ethel's undivided one-half interest in the Hartley Farm. Thus each of Ethel's issue was entitled to receive a one-seventh interest in her one-half interest, i.e., a one-fourteenth interest in the totality of the Hartley Farm. It was on this basis that Plaintiffs brought a partition action, seeking to have the Circuit Court of Douglas County partition the Hartley Farm.

## III.

After Lyle had made his will, he and Ethel allegedly made numerous statements to neighbors and relatives that Defendants

2. We note that Plaintiffs' appellate brief recites that Lyle made a will "reserving a life estate to himself and Ethel." We recognize the incongruity of Lyle's reserving a life estate by will.

were to receive the Hartley Farm and Plaintiffs were to receive the Denney Farm.

Ethel's sister–in–law, Myrl Cox, testified that prior to Lyle's death he had informed her of an agreement that he and Ethel had concerning their two tracts of land. She stated that Ethel's children by Mr. Denney "was supposed to get the Denney property and his home where he lived on, Ethel and Lyle, that was to go to the two daughters, Lyle's two daughters [Defendants herein]."

Voyne Hartley, the brother of Lyle, testified that "[w]ell, her kids was to get her place and his two girls was to get his place." He also stated that Ethel had made similar representations to him after Lyle had died. In like manner, Naida Hartley, wife of Voyne Hartley, testified that Ethel and Lyle "agreed for his kids to get his place and her kids her place." Helen Workman, a neighbor, also testified in a similar vein, as did Pete Workman, her husband, and Mike Engelhardt, grandson of Ethel.

Katrina testified that her father, Lyle, had told her that he and Loetta's mother [Ethel] had agreed that the property [Hartley Farm] would be divided between Loetta and Katrina. Katrina Dye also testified that at the hospital Ethel "told me that she and my dad had agreed that the property would be divided between Loetta and I."

## IV.

■ The standard of review herein is as set out by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares the law, or erroneously applies the law. *See* Rule 73.01, Missouri Rules of Civil Procedure (1996). There being no specific findings of fact, we consider all fact issues to have been found in accor-

dance with the result reached. *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 334 (Mo.App.1991).

Equity, to safeguard against fraud and perjury, imposes several requirements respecting the probative value of the proof necessary to take an oral contract out of the statutes requiring contracts involving the title to real estate or wills to be in writing, and among these are: 'There must be an absence of doubt or equivocation throughout the whole case in pleadings and proof. From end to end, it must be made out beyond a reasonable doubt and the state of the proof must bring the case within the reason of the exception to the statute, viz., that not to perform in kind, or in sort, would itself be a fraud. . . .'

*Feiden v. Gibson*, 218 S.W.2d 105, 107 (Mo. 1949).

■ In review of Plaintiffs' Point One, this Court notes that the statute of frauds (§ 432.010, RSMo 1978) provides, in pertinent part, as follows:

"No action shall be brought to charge any [person] . . . upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith. . . ."[3]

An oral contract is valid and enforceable, irrespective of the statute of frauds when there is proof of partial performance in furtherance of the agreement. *Pointer v. Ward*, 429 S.W.2d 269, 272 (Mo.1968). Nevertheless, "[w]e may not lose sight of the fact that action which causes an exception to the statute of frauds should be exercised most sparingly." *Jones v. Linder*, 247 S.W.2d 817, 825 (Mo.1952).[4]

---

**3.** It is not necessary to consider Plaintiffs' allegations with reference to § 451.220 since our conclusions relating to the application of the statute of frauds herein are dispositive of Plaintiffs' Point One.

**4.** As a preliminary matter, Defendants assert that Plaintiffs have failed to preserve the statute of fraud defense by not bringing the issue to the

attention of the trial court through pleadings and objections to testimony, citing *Sheinbein v. First Boston Corp.*, 670 S.W.2d 872, 879 (Mo.App. 1984). Plaintiffs have affirmatively pled the statute of fraud defense in paragraph 14 of their answer to Defendant's counter-claim. It is also apparent that the court became aware of Plaintiffs' affirmative allegation relating to the statute of frauds when just prior to the commencement

■ The *Pointer* court stated that three elements must be established to avoid the effect of the statute of frauds and secure the performance by a court of equity of a parol agreement. There must be proof: (1) of the performance of acts by the proponent which are cogent evidence of the existence of the pleaded contract; (2) of the terms of the verbal contract by clear, cogent, unequivocal and convincing testimony; and (3) that the acts, referred to in the first mentioned element, were done in reliance on the contract and that, as a result of the acts, the positions of the parties were so changed that to permit the other party to rely on the statute of frauds would result in a grossly unjust and deep-seated wrong, constituting fraud or something akin thereto, sometimes referred to as "virtual fraud, constructive fraud, or equitable fraud." *Pointer*, 429 S.W.2d at 272–73.

However, "[t]he first mentioned element of a plaintiff's cause of action must be established before the second, and not the other way around." *Id.* "[T]his doctrine of part performance requires that a plaintiff first show the performance of acts which point to or are evidentiary of the existence of the alleged contract between the parties...." *Jones*, 247 S.W.2d at 820. "In other words, if the acts allegedly constituting the 'part performance' do not, standing alone, constitute evidence of the existence of the pleaded contract, the court may not consider evidence of the terms of the verbal contract." *Pointer*, 429 S.W.2d at 273. " 'It is not sufficient that the verbal contract pleaded give color and meaning to acts allegedly performed pursuant to it; the acts performed must first evidence the existence of the pleaded contract.' " *Id.*

■ In the instant case, the part performance alleged by Defendants is that Lyle made a will leaving his property to Defendants and, five years later, Ethel and Lyle deeded the Denney Farm to Plaintiffs. These acts cannot be colored by the testimony of the witnesses. The acts performed by Ethel and Lyle must first present cogent evidence of the existence of the pleaded contracts, then the testimony of witnesses can be received which lends probative proof of the terms of the parol agreement. *Jones*, 247 S.W.2d at 820.

In review of the evidence tending to show the performance of acts by Ethel and Lyle in recognition of the oral agreement, it is noteworthy that when Lyle executed his will in 1985 Ethel did not then and there choose to prepare a deed and convey her interest to the Denney Farm to Plaintiffs. In fact, the deed to the Denney Farm was not prepared until some five years later and it was not until then that there exists any act by Lyle lending a degree of credence to an oral agreement. Further, Ethel's retention of title solely in her own name until 1990 can just as readily be construed as a desire on her part to continue managing her property separately, free of constraints of any agreement.

It is also noteworthy that at the time of the execution of Lyle's will Ethel did not choose to execute a separate will or contract to insure that the Denney Farm was devised to Plaintiffs.

Therefore, the evidence suggests the proposition that Lyle's actions in preparing his will were entirely unilateral, not a manifestation of an existing agreement.

More importantly, Ethel and Lyle's actions after Lyle's execution of his will do not convincingly prove that they were performed in reliance on a verbal contract dividing up their properties among their respective heirs and that their positions were so changed "that to permit the other party [to the oral agreement] to rely on the statute of frauds would result in a grossly unjust and deep-seated wrong, constituting fraud...." *Pointer*, 429 S.W.2d at 273. Since the acts were those of Lyle, there must be a showing that he relied on the agreement and so changed his position that he could not re-

of the hearing the trial court on its own asked Defendants' counsel whether he would have "[a]ny objections to him [Plaintiffs' counsel] filing his answer to your counterclaim?" Additionally, Plaintiffs' counsel made continuing objections on the basis of hearsay as to testimony and evidence relating to the oral agreement in contention herein. In either event, we examine the evidence and holding in this case for plain error affecting substantial rights. Rule 84.13(c), Missouri Rules of Civil Procedure (1996).

treat. However, "wills being ambulatory in nature, the execution of such an instrument does not in itself change the position of either party." *Rookstool v. Neaf*, 377 S.W.2d 402, 408 (Mo.1964). The failure to enforce the verbal agreement would not have resulted in a wrong to Lyle which would be tantamount to "virtual fraud" as to him since Lyle could have voided or altered his will and changed the manner and means of transferring title to his heirs. This was true during the five years prior to the execution of the Denney Farm deed and it was true up until the time of his death. In other words, he could have retreated from his position by executing a new will, or, together with Ethel, they could have made joint wills or mutual deeds to his property. Even after the Denney deed was made he could have willed the Hartley Farm to whomever he wished, subject to Ethel's statutory rights. Consequently, "a failure of the court to enforce the [verbal] contract would result in no deep–seated wrong, and no disastrous consequences" as to Lyle, which is a requirement of the third element set out in the *Pointer* opinion. *Pointer*, 429 S.W.2d at 273.

Further, Ethel did not change her position with respect to her separate property at the time of the execution of Lyle's will. She continued maintaining her right under § 451.250, RSMo 1978, to control and convey her separate property to whomever she wished, subject to Lyle's statutory rights. The failure of the court to enforce the oral contract between Ethel and Lyle would not have resulted in either a deep-seated wrong or a disastrous consequence to her.

Neither the second nor the third elements of the *Pointer* test have been met. Moreover, Defendants' own pleadings assert that Loetta was offered a share of the Denney Farm, which she declined. This is inconsistent with the terms of the purported agreement that Defendants would receive the Hartley Farm and Plaintiffs would receive the Denney Farm.

Defendants have not proven partial performance of the parol agreement allegedly entered into by Ethel and Lyle so as to remove the parol agreement from the operation of the statute of frauds. *Rookstool*, 377 S.W.2d at 404. Plaintiffs' Point One is well taken.

Defendants also asseverate that there is evidence supporting a theory of estoppel upon which the trial court could have based its decision. They argue that because of the promises of Ethel, Defendants (1) failed to probate Lyle's will and (2) did not have their names placed on the deeds to the Denney Farm.

In their Point Two, Plaintiffs argue that there was insufficient evidence to support the Defendants' "estoppel element of reliance," in that Ethel and Defendants' failure to probate Lyle's will was due to their uninformed and mistaken belief that they didn't need to. Plaintiffs further asseverate that there was not sufficient evidence to establish that the Defendants were offered a share of the Denney Farm.

■ As a general axiom of law, estoppels are not favorites of the law and should not be lightly invoked. They should be applied with care and caution and only when all elements clearly appear. *G.M. Morris Boat Co., v. Bishop*, 631 S.W.2d 84, 88 (Mo.App.1982). Otherwise, the strict requirements of the statute of frauds would become an empty shell, easily avoided by the use of the amorphous concept of estoppel.

■ It is not entirely clear as to what type of estoppel Defendants are asserting. In an equitable estoppel, or estoppel in pais, there exists a condition in which justice forbids that one speak the truth in his own behalf. *Emery v. Brown Shoe Co.*, 287 S.W.2d 761, 766 (Mo.1956). " 'To constitute estoppel in pais, three things must occur: First, an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; second, an action by the other party on the faith of such admission, statement or act; and, third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act.' " *In re Jamison's Estate*, 202 S.W.2d 879, 887 (Mo.1947). "To work an equitable estoppel, the person claiming the benefit of the estoppel must have been misled into such action that he will suffer injury if the estoppel is not declared." *Emery*, 287 S.W.2d at

767. "[I]f both parties know the facts or have equal means of ascertaining them there can be no estoppel. . . ." *Rhoads v. Rhoads,* 342 Mo. 934, 119 S.W.2d 247, 252 (1938). "[T]here is no estoppel where acquiescence by all concerned is due to a common mistake." *Sutorius v. Mayor,* 350 Mo. 1235, 170 S.W.2d 387, 396 (1943).

■ If Defendants are asserting a promissory estoppel, there are three very similar elements, these are: (1) a promise; (2) a detrimental reliance on such promise; and (3) injustice can be avoided only by enforcement of the promise. *Katz v. Danny Dare, Inc.,* 610 S.W.2d 121, 124 (Mo.App.1980).

Consequently, a reliance on a representation is common to both concepts of estoppel.

■ The record shows that neither Ethel nor the Defendants knew that it was necessary to probate Lyle's will. Loetta testified that after Lyle's death, there was no discussion between herself and her mother concerning the will:

Q. You testified that you didn't know that the will—necessary to probate a will?

A. That's correct, sir, I did not.

Q. That was an honest mistake on your part.

A. An honest mistake.

Q. Did your mother tell you that the will did not have to be probated?

A. Mom did not think, she did not know it had to be probated, she had no idea it had to be probated.

Q. So as far as you know your mother made the same mistake, she didn't know either?

A. That's correct, she did not know or it would have been probated.

Q. Is that your testimony?

A. Yes, it is.

Q. So she didn't tell you or make any agreements with you that if she or you did not probate the will that certain things would happen, did she?

A. She didn't know it had to be probated.

Q. That discussion never occurred?

A. She didn't understand that; I didn't understand that; we don't know the law, we're just common people.

Q. Okay, But she never told you anything in which you relied upon at that time as far as probating The will, is that correct?

A. State that again.

Q. There was no statement to her or agreements between you and her to not probate the will, then, was there?

A. There was no statement only because she didn't know.

Katrina's testimony, likewise, demonstrated no conscious decision by her to forego the probate of Lyle's estate based on statements or representations made by Ethel:

Q. What did she tell you while she [Ethel] was in the hospital concerning the land, Katrina?

A. She told me that she and my dad had agreed that the property would be divided between Loetta and I.

Q. Okay. Did she mention anything to you about your father's will?

A. Yes, sir.

Q. What did she tell you about that?

A. She said they had made a will.

Q. Okay, and did she die shortly after that, do you know?

A. Well, yes, I really can't remember.

Q. That's fine.

It is clear that Lyle's will was not probated due to the common mistake by both Ethel and Defendants that the will did not need to be probated to be legally effective. "Parties are presumed to know the law and cannot normally avoid an act or deed on the ground that they were ignorant of the law." *General Motors Corp. v. City of Kansas City,* 895 S.W.2d 59, 62 (Mo.App.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995). "It is well settled that when the facts are known to both parties, or they have equal means of knowledge, there is no estoppel in favor of either." *Wood v. White Eagle Oil & Refining Co.,* 220 Mo.App. 1004, 274 S.W. 894, 900 (1925). The requisite element of reliance on the representations made by Ethel is missing, whether Defendant is arguing

on the basis of equitable or promissory estoppel.

The foregoing also belies Defendants' contentions that they did not have their names placed on the 1990 deed Ethel made to Plaintiffs, based on Ethel's representations to Defendants at the time of Lyle's death. If they did not realize that Lyle's will had to be probated to become effective, they necessarily could not have foregone their rights to probate the will in reliance on Ethel's representations.

Paragraph 10 of Defendants' pleadings also states that:

At Lyle Hartley's death, Ethel Hartley promised that Defendants would receive the subject real estate of Lyle Hartley ... and, relying on said promises, Defendants ... did not have their names on the deeds Ethel Hartley made to her real estate....

However, Ethel made the deed to the Denney Farm in 1990, some sixteen months *before* Lyle's death. Therefore, it would have been an impossibility for the Defendants to have foregone any rights to have their names placed on Ethel's 1990 deed to the Denney Farm, as Defendants alleged in their pleadings.

 Loetta also testified that when she was in her teens, some twenty years prior to the trial herein, Ethel had asked her if she wanted part of the Denney farm. Loetta stated that she declined from having her name placed on the deed because that was Plaintiffs' father's land and Ethel promised that Loetta and Katrina would receive the Hartley land.

The foregoing, however, does not constitute a binding agreement between Loetta and Ethel to make a will. Ethel made no express offer to Loetta. At most it was a disposition to make a future conveyance or will, for which Ethel sought no consideration. *See Scheer v. Gerleman,* 221 S.W.2d 875, 881 (Mo.1949); *Feiden,* 218 S.W.2d at 107; *Sulgrove v. Sulgrove,* 215 S.W.2d 490, 491 (Mo. 1948).

The testimony at trial shows that Ethel made the 1992 deed and then discussed the matter with Loetta only *after* the deed was made. On cross-examination Loetta admitted that there was no discussion between her and her mother immediately prior to the execution of the deed:

Q. Okay. Now, the deed that was prepared that's been introduced into evidence, I believe as Exhibit 2, from your mother and father to the Denney children, are you—is it your testimony then that there was no discussion between you and your mother prior to the deed being made?
A. She didn't discuss it with me. Only thing she said was she told me she made the deeds.
Q. All right. So there really was no discussion prior to the deed being made, is that correct?
A. She just told me when the Denney children were to get their land that she was to make deeds to them. She was going to make deeds to them and evidently she did.
Q. Did she call you and was there any discussion to the effect she was having them prepared, were you involved in their preparation?
A. No, I was not involved in the preparation of the Denny deeds.

We, therefore, conclude that the time between the conversations Loetta had with her mother in her teens and the execution of the 1992 deed do not rise to the level of proof of reliance necessary to invoke an estoppel.

Further, there was no evidence by Katrina that she was ever offered a part of the Denney Farm. In fact, there is no reason why she would have been given the option, since she was Lyle's daughter from a previous marriage.

At most, Defendants herein have demonstrated an expectancy of an inheritance, not the necessary acts of reliance which would estop Plaintiffs' lawful interest in the property. Plaintiffs' Point Two is well taken.

The court erred in its application of the law to this case. Accordingly, the judgment herein is reversed and remanded for further proceedings consistent with this opinion.