

# Missouri Court of Appeals
## Southern District

### In Division

CANDACE HARRELL KYLE,           )
CANDACE HARRELL KYLE, Personal    )
Representative of the Estate of GEORGE L. )
HARRELL,                  )
                               )
      Plaintiff-Respondent,     )
                               )
        v.                  )      No. SD38385
                               )
CAROLYN FOWLER, Individually, as   )      **Filed: June 16, 2025**
Personal Representative of the Estate of  )
VERNON RAY FOWLER, and as Trustee  )
Of the Joint Revocable Living Trust     )
Indenture of Vernon Ray Fowler and   )
Carolyn A. Fowler dated June 21, 2011,  )
                               )
      Defendant-Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

The Honorable Joshua D. Underwood, Judge

### <u>VACATED AND REMANDED</u>

This case involves a dispute over a one-half interest in a 75.55-acre property locate in New Madrid County, Missouri, known to the parties as the Farrenburg Farm. Following a bench trial, Carolyn Fowler ("Appellant" or "Mrs. Fowler") appeals the trial court's judgment granting relief on Count I (Cancellation of Deed), Count II

1

(Constructive Trust and Accounting), and Count V (Breach of Contract) of Candace Harrell Kyle's ("Respondent's" or "Mrs. Kyle's") Third Amended Petition ("Petition").[1]

Relevant to our disposition of this appeal, which presents 13 points for our review, Appellant argues in Point I that the trial court erred in granting Count I (Cancellation of Deed) because it misapplied section 516.010, in that Respondent's claim is time-barred under the 10-year statute of limitations.[2] Appellant also argues in Point IX that the trial court erred in granting Count V (Breach of Contract) because it misapplied section 432.010, in that the alleged oral contract for an interest in land is unenforceable under the statue of frauds.[3] Because Respondent's Count I (Cancellation of Deed) is time

---

[1] Respondent's Petition included five separate causes of action: Count I (Cancellation of Deed), Count II (Constructive Trust and Accounting), Count III (Declaratory Judgment), Count IV (Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction), and Count V (Breach of Contract). The Judgment specifically granted Counts I, V, and the Constructive Trust claim included in Count II, but made no specific mention of the Accounting claim also included in Count II, as well as Counts III, and IV. "If a judgment, by implication, necessarily carries with it a finding upon other counts, the judgment will be sustained as final even though the count is not specifically mentioned." *Reynolds v. Berger*, 649 S.W.3d 322, 328-29 (Mo. App. E.D. 2022) (quoting *Jefferson v. Am. Fin. Grp., Inc.*, 163 S.W.3d 485, 487 n.2 (Mo. App. E.D. 2005)). Here, the trial court's findings on Counts I, II (Constructive Trust), and V, establishing that Mrs. Kyle had a legally protected interest in the Farrenburg Farm, implicitly resolved Counts II (Accounting), III, and IV in Mrs. Kyle's favor.

[2] Unless otherwise indicated, all statutory references are to RSMo 2016.

[3] Appellant raises 11 additional points in her appeal, Points II-VIII and X-XIII. We need not reach the merits of these points because our disposition of Points I and IX renders them moot. *T.C.T. v. Shafinia*, 351 S.W.3d 34, 36 (Mo. App. W.D. 2011) ("A moot issue is one upon which, if we resolved it in the appellant's favor, our holding would have no practical effect."). In particular, the trial court's grant of Count II (Constructive Trust) is vacated because of our disposition of Count I (Cancellation of Deed). *See Dean v. Noble*, 477 S.W.3d 197, 206 (Mo. App. W.D. 2015) (holding the trial court properly dismissed as time-barred the plaintiff's

2

barred under section 516.010, and because the alleged oral contract for land is unenforceable under the statute of frauds, the trial court's judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

**Factual Background and Procedural History**

Viewed in the light most favorable to Respondent, the record on appeal reveals the following facts:[4]

On January 3, 1969, Appellant's now-deceased husband, Ray Fowler ("Mr. Fowler"), and Respondent's now-deceased mother and Mr. Fowler's aunt, Geneva Harrell ("Mrs. Harrell"), purchased the Farrenburg Farm from Dorothy and John

---

constructive trust claim because it was derivative to the plaintiff's fraud claim). Similarly, our disposition of Count II (Constructive Trust) vacates the relief granted to Mrs. Kyle on her Accounting claim, also under Count II. *Shaner v. System Integrators, Inc.*, 63 S.W.3d 674, 677 (Mo. App. E.D. 2001) (quoting *American Button Co. v. Weishaar*, 170 S.W.2d 147, 152 (Mo. App. St.L.D. 1943)) ("[B]efore the plaintiff may be accorded an accounting, there must exist some distinct and special ground of equitable jurisdiction to which the demand for an accounting will be fairly incidental or ancillary."). Finally, our disposition of Counts I, II, and V establish that Mrs. Kyle has no legally protected interest in the Farrenburg Farm, and thus her relief granted on Counts III and IV is vacated. *See Grewell v. State Farm Mut. Auto. Ins. Co. Inc.*, 102 S.W.3d 33, 36 (Mo. banc 2003) (finding that a plaintiff asserting a declaratory judgment claim must "demonstrate a legally protected interest directly at issue and subject to immediate or prospective consequential relief"); and *Rebman v. Parson*, 576 S.W.3d 605, 611 (Mo. banc 2019) ("[A] party must demonstrate a risk of irreparable injury to obtain either preliminary or permanent injunctive relief, [and] a party seeking a permanent injunction must show . . . irreparable harm and a lack of adequate remedy at law.").

[4] "All evidence is '[v]iewed in the light most favorable to the judgment[.]'" *Pentecost v. Webster*, 674 S.W.3d 195, 201 n.3 (Mo. App. S.D. 2023) (quoting *Dumproff v. Driskill*, 376 S.W.3d 680, 684 (Mo. App. S.D. 2012)).

3

Edwards for $37,775.[5] Mrs. Harrell and Mr. Fowler contributed $7,500 and $55, respectively, toward the purchase price, and each owned a one-half interest in the Farrenburg Farm as tenants in common. The Edwards seller-financed the remaining $30,220, secured by a deed of trust, which Mr. and Mrs. Fowler and Mrs. Harrell and her husband, George Harrell ("Mr. Harrell"), all signed.

On November 30, 1978, and again on April 15, 1983, the parties refinanced the original note on the Farrenburg Farm, paying the balance due, and Mr. Fowler received an additional $30,000 in funds, which he used to purchase additional farmland.

Then, on May 12, 1984, Mr. and Mrs. Harrell conveyed all their interest in the Farrenburg Farm to Mr. Fowler by quit-claim deed ("the 1984 Deed").[6] The 1984 Deed contains the following language:

> TO HAVE AND TO HOLD the same, with all the rights, immunities, privileges and appurtenances thereto belonging unto the said parties of the Second Part and their heirs and assigns, FOREVER, so that neither the said parties of the first part nor their heirs or any other person or persons for them or in their name or behalf shall or will hereafter claim or demand any

---

[5] There are several individuals, who are all related, involved in this case. Respondent Candace Kyle is the daughter of George and Geneva Harrell (both now deceased) and the Personal Representative of George Harrell's estate. Georgia Harrell is George and Geneva Harrell's other daughter. Ray Fowler (now deceased) and Appellant Carolyn Fowler were husband and wife. Ray Fowler was the nephew of Geneva Harrell through his mother. George and Geneva Harrell and Ray Fowler all died shortly before or during the pending litigation. George Harrell was the original plaintiff in this case. Since his death, Candace Kyle, as personal representative of Mr. Harrell's estate, became the plaintiff. Since Ray Fowler died, Carolyn Fowler is a defendant individually, as trustee, and as personal representative of Ray Fowler's estate.

[6] Despite both Mr. and Mrs. Harrell deeding all of their interest in the Farrenburg Farm to Mr. Fowler in the 1984 Deed, Mrs. Harrell had never deeded an interest in the Farrenburg Farm to Mr. Harrell. At the time the 1984 Deed was executed, Mrs. Harrell owned a one-half interest in the Farrenburg Farm with Mr. Fowler as tenants in common.

right or title to the aforesaid premises or any part thereof, but they and every one of them, shall, by these presents, be excluded and forever barred.

The 1984 Deed was recorded with the New Madrid County Recorder of Deeds on May 17, 1984. On May 3, 1985, Mr. and Mrs. Fowler pledged the Farrenburg Farm and another farm as security under a $400,000 Deed of Trust Securing Future Advances. Mr. and Mrs. Harrell did not sign this deed of trust.

From 1969 to 2019, Mr. and Mrs. Fowler lived in southeast Missouri and farmed many properties, including the Farrenburg Farm, the Ristine Farm (which the Fowlers and the Harrells owned together), and other properties owned by Mr. and Mrs. Harrell. Mr. and Mrs. Harrell lived mostly in Illinois from 1969 to 1992, but relocated to Buffalo, Missouri, in the 1980's and then to Texas in 1992 to avoid creditors. At that same time and because they were selling or disposing of any assets connected to Mr. Harrell, and despite the 1984 Deed to Mr. Fowler, Mr. and Mrs. Harrell deeded all their interest in the Farrenburg Farm via warranty deed ("the 1992 Deed") to their other daughter, Georgia. Mr. and Mrs. Harrell resided in Texas for the remainder of their lives.

On July 3, 2000, Federal Land Bank Association of Southeast Missouri and Production Credit Association of Southeast Missouri (the "PCA") sent Mr. and Mrs. Harrell a letter informing them Mr. Fowler had requested a change in his payments for the deed of trust on the Farrenburg Farm. The letter stated:

> We understand that you have deeded the property to Ray Fowler, but since you are still liable on the note, it will be necessary to obtain your signatures on the enclosed document, Request for Change in Payment Dates. This will better enable Mr. Fowler to make the annual installments in a timely manner. No money is required from you.

Mr. and Mrs. Harrell were eventually released from any and all notes on the Farrenburg Farm.

From 1989 to 2016, Mr. Fowler made very sporadic payments, which he often denominated as "rent," to Mr. and Mrs. Harrell on various properties owned by them, including the Farrenburg Farm. Approximately six months after receiving the letter from PCA notifying them they had deeded the Farrenburg Farm to Mr. Fowler, Mr. and Mrs. Harrell, Mrs. Kyle, and Georgia filed suit against Mr. and Mrs. Fowler on January 5, 2001, alleging Mr. Fowler owed the Harrells, "at least [$13,082.82] and for the [$8,000] loaned in cash and, in addition, the [$4,082.82], which is the balance owed on the original [$13,082.82] check for 1990 rents given in 1993[,]" for rent on his use of various farms owned by them, including the Farrenburg Farm. They alleged in the lawsuit that "no rent has been paid to Plaintiffs for the years 1991 through 2000[.]" The lawsuit did not seek cancellation of the 1984 Deed or allege that false or fraudulent representations prompted them to execute the 1984 Deed. The lawsuit was dismissed after Mr. Fowler signed a promissory note in the amount of $17,889.81, and, from 2001 to 2019, he continued to farm the Farrenburg Farm and make irregular payments to Mr. and Mrs. Harrell.

On September 4, 2009, Mr. and Mrs. Fowler executed another deed of trust pledging the Farrenburg Farm as collateral to secure a loan with Focus Bank. Mr. and Mrs. Fowler transferred all their interest in the Farrenburg Farm to their trust in 2014.

Mr. Harrell entered memory care in the early months of 2016, after suffering a stroke in August of 2015, and Mrs. Harrell was legally blind and could not read. Because of their age and poor health, Mrs. Kyle began managing her parents' financial and business affairs in 2016. During that time, Mrs. Kyle contacted Mr. Fowler, stating that her parents wanted to sell their interest in the Farrenburg Farm. Mr. Fowler did not

concede to these requests and, in 2018, stated for the first time to Mrs. Kyle that he owned the entirety of the Farrenburg Farm, pointing to the 1984 Deed.

Mrs. Harrell died on February 19, 2019. Four weeks later, Mrs. Kyle's sister, Georgia, deeded her alleged interest in the Farrenburg Farm, which she received in the 1992 Deed, to Mr. Harrell. The following week, on March 28, 2019, Mrs. Kyle filed a lawsuit on Mr. Harrell's behalf, alleging Mr. Fowler obtained the 1984 Deed by fraud.

Mr. Harrell died two weeks later, and Mrs. Kyle was appointed personal representative of Mr. Harrell's estate both in Texas and for ancillary probate in New Madrid County, Missouri. Around that same time, Mr. Fowler suffered an aneurism and fell into a week-long coma.

A bench trial was held on August 10, 2022. Mrs. Kyle testified that Mrs. Harrell told her that "Ray had wanted mom and dad to sign a qui[]t claim deed on Farrenburg so that he could obtain a loan with favorable interest rate[,]" and that the 1984 Deed was "strictly an accommodation [for Mr. Fowler] to get [a] loan," that he would pay rent, and that he would reconvey his interest. While Mrs. Kyle admitted that no signed writing exists specifying the amount of rent agreed upon, she introduced checks, writings, and notes sent by Mr. Fowler supporting the existence of an oral agreement. Mrs. Kyle also admitted there was no date on which the parties agreed that Mr. Fowler would reconvey to Mrs. Harrell her interest in the Farrenburg Farm.

Mr. Fowler testified at trial that the checks sent to Mr. and Mrs. Harrell were not "rent" but gratuitous payments to Mr. Harrell. After Mr. Fowler briefly testified, the trial court was concerned with his competence, and the parties agreed to admit his prior deposition into evidence. Mr. Fowler introduced witness testimony from his sister, Joann

7

Sisson, and his son, Tom Fowler. Both witnesses testified that Mr. and Mrs. Harrell never mentioned an agreement with Mr. Fowler or that they still owned a one-half interest in the Farrenburg Farm. Tom Fowler testified that Mr. Fowler told him that Mr. Harrell had signed the Farrenburg Farm over to him.

The trial court entered Judgment in Mrs. Kyle's favor on all counts, determining Mr. Fowler and the Harrells entered into an oral contract in which the Harrells agreed to deed their one-half interest in the Farrenburg Farm to Mr. Fowler so he could get a loan, in exchange for Mr. Fowler farming the Farrenburg Farm and paying rent for the benefit of the Harrells, and that Mr. Fowler obtained the 1984 Deed by fraud.[7] This appeal followed.

**Standard of Review**

"This Court must sustain the trial court's judgment 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" ***Simpson v. Simpson***, 352 S.W.3d 362, 363 (Mo. banc 2011) (quoting ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976)). "The trial court's judgment is presumed valid, the burden is on the appellant to demonstrate its incorrectness, and due regard is given to the trial court to judge the credibility of witnesses." ***Harness v. Wallace***, 167 S.W.3d 288,

---

[7] This case was tried twice. The first trial was held on August 31, 2022, under Judge Reeves. The trial court entered judgment for Respondent. The Fowlers filed a notice of appeal on December 12, 2022, which was ultimately dismissed for lack of final judgment. Mr. Fowler died on February 28, 2023, and Judge Reeves died on June 20, 2023. A second trial was held on November 6, 2023, under Judge Underwood. No new testimony was offered in the second trial, though additional exhibits and arguments were presented. Judge Underwood took the matter under advisement and, on January 11, 2024, adopted Mrs. Kyle's proposed judgment.

289 (Mo. App. S.D. 2005).  This Court reviews issues of law *de novo*.  ***Clippard v. Clippard***, 642 S.W.3d 761, 764 (Mo. App. S.D. 2022).  Whether a statute of limitations applies is an issue of law this Court reviews *de novo*.  ***Ebert v. Ebert***, 627 S.W.3d 571, 579 (Mo. App. E.D. 2021).  "Whether a writing satisfies the statute of frauds is a question of law."  ***Doss & Harper Stone Co., Inc. v. Hoover Bros. Farms, Inc.***, 191 S.W.3d 59, 62 (Mo. App. S.D. 2006).

## Analysis

"This case presents a classic cautionary tale of two practical and age-old legal maxims:  (1) 'Get it in writing;' and (2) 'Don't sit on your rights.'"  ***Bacon v. Friedman***, 621 S.W.3d 170, 175 (Mo. App. E.D. 2021).[8]  While Appellant asserts 13 points, only two are relevant to our disposition of this appeal:  Points I and IX.

*Point I:  Cancellation of the 1984 Deed*

In Point I, Appellant argues the trial court erred in granting Count I (Cancellation of Deed) because Respondent's claim is time-barred under section 516.010.  We agree.

"Actions to quiet title are governed by a [10]-year statute of limitations period."  ***Pentecost***, 674 S.W.3d at 205 (citing ***Eckel***, 540 S.W.3d at 484).

---

[8] We reiterate the importance of the statute of limitations as stressed by the court in ***Eckel***:  the statute of limitations is important because it requires claimants "'to seasonably file and to vigilantly prosecute their claims for relief' while evidence and witnesses remain available."  ***Eckel v. Eckel***, 540 S.W.3d 476, 484 n.19 (Mo. App. W.D. 2018) (quoting ***Dorris v. State***, 360 S.W.3d 260, 269 (Mo. banc 2012)).  Here, Mr. and Mrs. Harrell, individuals with superior knowledge of the events forming the basis of Mrs. Kyle's claims, were deceased at the commencement of this lawsuit, and Mr. Fowler died during the course of this litigation, leaving the trial court to rely largely on hearsay testimony of individuals not privy to the agreement allegedly made in 1984.

9

Section 516.010 states, in relevant part:

> No action for the recovery of any lands, . . . or for the recovery of the possession thereof, ***shall be commenced***, . . . unless it appear[s] that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, ***within [10] years*** before the commencement of such action.

(Emphasis added). The Supreme Court of Missouri has long held that section 516.010 applies in cases to set aside a deed, including where a plaintiff alleges a deed was procured by fraud, and the parties here agree. *See **Coleman v. Alderman***, 210 S.W.2d 994, 995 (Mo. 1948) ("An action to set aside a fraudulent conveyance has been held to be governed by the section of the statute of limitations governing actions for the recovery of lands. Section 1002, R.S.1939, Mo.R.S.A., [now section 516.010], imposes a limitation of [10] years on such actions."); *see also **Hunter v. Hunter***, 237 S.W.2d 100, 102 (Mo. 1951); ***Branner v. Klaber***, 49 S.W.2d 169, 176-77 (Mo. 1932); ***Hayward v. Arnold***, 779 S.W.2d 342, 344 (Mo. App. W.D. 1989); and ***Pemberton v. Reed***, 545 S.W.2d 698, 700 (Mo. App. K.C.D. 1976). Thus, for Mrs. Kyle's cause of action to be timely, it must have been filed "within [10] years of the date the plaintiff, or someone under whom he claims, had possession of, or record title to, the property." ***Eckel***, 540 S.W.3d at 484.

Here, it is undisputed that the 1984 Deed was recorded on May 17, 1984. As such, because record title passed from Mrs. Harrell to Mr. Fowler on May 17, 1984, the statute of limitations would have run on May 17, 1994, absent any contrary evidence. "The owner of the record title is presumed to have possession of [their] land absent contrary evidence." ***Pentecost***, 674 S.W.3d at 206 (citing ***Hooks v. Spies***, 583 S.W.2d 569, 573 (Mo. App. E.D. 1979)). Mrs. Kyle filed her lawsuit 25 years after the statute of limitations barred her claim.

Further, without discounting the evidence supporting the judgment, there is nothing in the factual record highlighting contrary evidence suggesting or establishing that Mr. and Mrs. Harrell had actual possession of the Farrenburg Farm since May 17, 1984, when record title passed entirely to Mr. Fowler. The Farrenburg Farm is farmland. "Vacant and rural land is constructively possessed by the person holding title." *Pentecost*, 674 S.W.3d at 206 (citing *Hooks*, 583 S.W.2d at 572-73). "[T]he record title to wild and vacant land raises the presumption that the possession is in the record owner." *Id.* (quoting *Cunningham v. Hughes*, 889 S.W.2d 864. 866 (Mo. App. W.D. 1994)). Neither Mrs. Harrell nor Mr. Harrell lived on, farmed, or possessed the Farrenburg Farm in any way. Mr. and Mrs. Harrell barely lived in Missouri, and may or may not have lived in Missouri in 1984 when they executed the 1984 Deed. By all accounts, Mr. and Mrs. Harrell relocated to Texas in 1992, at which time they again deeded any interest they allegedly had in the Farrenburg Farm to Georgia, who lived in New York. After that point, they certainly did not hold record title to the Farrenburg Farm, having deeded it away in both 1984 and 1992.

While the trial court concluded, and Mrs. Kyle now argues, that despite record title to the Farrenburg Farm having transferred to Mr. Fowler on May 17, 1984, and despite them never physically possessing the property, Mr. and Mrs. Harrell "possessed" the Farrenburg Farm through 2016 by receiving "rent" from Mr. Fowler, and thus her cause of action was not time-barred, we are unpersuaded by this argument. *See Eckel*, 540 S.W.3d at 484 (holding the 10-year statute of limitations accrued when record title was passed from plaintiffs to defendants in 2003, barring the quiet-title action

11

commenced in 2016).  In making this argument, Mrs. Kyle relies on the Supreme Court of Missouri's opinion in *James v. James*, 248 S.W.2d 623 (Mo. 1952).

In *James*, the plaintiff deeded real property to the defendant, her then-husband, on May 9, 1938.  *Id.* at 624.  Prior to the conveyance, the defendant told her that deeding the property was necessary so he could sign bonds.  *Id.*  The defendant made an oral promise to deed the property back at any time.  *Id.* at 625.  The plaintiff and defendant later divorced, and plaintiff filed suit on November 12, 1949, seeking to set aside the deed.  *Id.* On appeal, the court held that the plaintiff's action to set aside the deed was not time-barred, despite that she brought her cause of action more than 10 years after she deeded the property to the defendant, because she maintained actual possession by living on the property, collecting rents, and keeping it in repair.  *Id.* at 626.

Mrs. Kyle's reliance on *James* is inapposite.  *James* does not stand for the proposition that merely collecting rent constitutes actual possession.  In *James*, the plaintiff maintained actual possession of the property when she continued to live on the property through the commencement of her lawsuit.  *See id.* ("She was never out of possession and control of the property, except for 'about a day' in 1942.").  Unlike the facts in *James*, there is nothing in the record that establishes the Harrells or Mrs. Kyle had actual possession of the Farrenburg Farm since May 17, 1984, when the Harrells deeded the property to Mr. Fowler.

While this Court does not believe that paying rent constitutes possession of the Farrenburg Farm by Mr. and Mrs. Harrell in this case, even if we were to hold it did, the latest Mrs. Kyle's cause of action could be said to have accrued was in 2001, when Mr. and Mrs. Harrell, Mrs. Kyle, and Georgia filed their petition against Mr. and Mrs. Fowler

asserting, among other things, the Fowlers failed to pay rent for the Farrenburg Farm "for the years 1991 through 2000." Because, in 2001, the Harrells admitted they had not received rent since 1991, the Harrells would not have been in possession of the Farrenburg Farm by receiving rents for 10 years or longer. If it did not run already, the statute of limitations would have run at that time. *See **Warren County Concrete, L.L.C. v. Peoples Bank & Trust Co.***, 340 S.W.3d 289, 291 (Mo. App. E.D. 2011) ("[A] cause of action accrues when a plaintiff has some notice or awareness that he has suffered an injury or that another individual has committed a legal wrong which may result in harm to the plaintiff.").

Finally, at the very latest, the statute of limitations would have started to run in 2000, when Mr. and Mrs. Harrell received a letter from PNC notifying them that they deeded the Farrenburg Farm to Mr. Fowler in 1984. Mrs. Kyle admitted at trial that Mr. and Mrs. Harrell would have understood in July of 2000, that they had no legal interest in the Farrenburg Farm upon receipt of that letter at the very least. As such, the statute of limitations would have run under this scenario in 2010.

Accordingly, Respondent's Count I (Cancellation of Deed) far exceeded the 10-year statute of limitations under section 516.010. Appellant's Point I is granted.

*Point IX: Breach of Contract*

In Point IX, Mrs. Fowler argues the trial court erred in granting Count V (Breach of Contract) because the alleged oral contract for land is unenforceable under the statute of frauds. We agree.

Missouri's statute of frauds statute, section 432.010, states, in relevant part:

No action shall be brought . . . upon any contract made for the sale of lands . . . or an interest in or concerning them, or any lease thereof, ***for a longer***

***time than one year***, or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, ***shall be in writing and signed by the party to be charged therewith***, or some other person by him thereto lawfully authorized . . . .

(Emphasis added). In other words, to be enforceable, a contract for an interest in land must be memorialized in a signed writing and "contain the essential terms of the contract, including the parties, the subject matter, the consideration or price, and the promises on both sides." ***Johnson v. Cook***, 167 S.W.3d 258, 262 (Mo. App. E.D. 2005). Where there is no signed writing containing the essential terms, an action on the contract must generally be brought within one year of its making. Section 432.010.

### I. The terms of the alleged contract, identified by the trial court, do not support the making of a valid agreement

Here, the trial court recognized that no signed writing exists, and instead found Mr. Fowler entered into an oral contract with Mrs. Harrell for the 1984 Deed, identifying three terms: (1) that Mr. and Mrs. Harrell would deed the Farrenburg Farm to Mr. Fowler in order for Mr. Fowler to get a loan; (2) that Mr. Fowler would pay rent and farm the Farrenburg Farm; and (3) that Mr. Fowler would reconvey the property "when possible to do so."[9]

---

[9] The third term identified by the trial court, that Mr. Fowler would reconvey the Farrenburg Farm "when possible to do so," is "uncertain" and "indefinite" on its face and in its application by the parties, and thus cannot support formation of a valid oral contract. *See **Fedynich v. Massood***, 342 S.W.3d 887, 891-92 (Mo. App. W.D. 2011); and ***Around The World Importing, Inc. v. Mercantile Tr. Co.***, 795 S.W.2d 85, 90 (Mo. App. E.D. 1990). While Mr. Fowler was to reconvey Mrs. Harrell's interest "when possible to do so," viewing the evidence in light most favorable to the verdict, Mr. and Mrs. Harrell never once sought to enforce this alleged term until 2016, 32 years after the making of the alleged agreement, when Mrs. Kyle did so on their behalf. The lawsuit was brought by Mrs. Kyle in 2019, after Mrs. Harrell had died, and two weeks before Mr. Harrell died. We are left to guess "when," and under what circumstances, it would have been

14

However, such terms, in themselves, establish the parties left for future determination the duration of Mr. Fowler's rent payments and when he was to deed back Mrs. Harrell's interest in the Farrenburg Farm. Such terms cannot support the making of a valid agreement. *Fedynich*, 342 S.W.3d at 891-92 (quoting ***Smith v. Hammons***, 63 S.W.3d 320, 325 (Mo. App. S.D. 2002)) ("If the parties have reserved the essential terms of the contract for future determination, there can be no valid agreement."). Moreover, when asked at trial, "[i]s there any written document specifying how much these alleged rent payments are supposed to be[,]" Mrs. Kyle stated, "[w]ritten document, no." When asked, "[h]ow long do you think this rent was supposed to go on[,]" Mrs. Kyle stated, "I don't know." When asked, "[h]ave you found a single note from 1984, . . . that says . . . I'm only deeding this, or signing this quit claim deed with the promise to get it back[,]" Mrs. Kyle stated, "[n]o." As such, the terms identified by the trial court cannot support the making of an enforceable contract because we are left to guess the duration of Mr. Fowler's rent obligation and when he was to deed back Mrs. Harrell's interest. *See id.* at 891 ("No contract is formed where the terms of the agreement are unduly uncertain or indefinite.").

## II. Mrs. Kyle, by introducing writings and notes by Mr. Fowler, did not satisfy the memorandum requirement under the statute of frauds

Moreover, while the trial court found the parties entered into an oral contract for land, which generally does not satisfy the statute of frauds, the trial court held that:

> [Mr.] Fowler's writings and notes from 1984 to 2016, when taken together as a whole, clearly meet the memorandum requirement under the statute of frauds. [Mr.] Fowler's writings show that he obtained a loan using the Farrenburg Farm as collateral and precisely how rent was calculated and

---

"possible" for Mr. Fowler to reconvey Mrs. Harrell's interest. We will never know, because all of the parties privy to the alleged agreement are now deceased.

paid overtime, until [the Fowlers] breached the contract. These writings are sufficient to satisfy the writing requirement.

While "Missouri courts have recognized that a writing, as required by the statute of frauds, need not be contained in a single document," *Rone v. Reeves*, 20 S.W.3d 526, 529 (Mo. App. S.D. 2000) (internal quotations and citation omitted), the writings "must be connected by express reference to one another by clear implication established through their respective contents." *Pecos I, LLC v. Meyer*, 655 S.W.3d 579, 589 (Mo. App. E.D. 2022) (quoting *Mayer v. King Cola Mid-America, Inc.*, 660 S.W.2d 746, 748 (Mo. App. E.D. 1983)).

Here, none of the writings refer to the alleged contract or to each other, and were all made after 1984, when the alleged contract was entered into. While "[a] writing need not be an explicit and complete contract, and the terms therein need not be definite," the substance of the agreement must appear from the writing. *Rone*, 20 S.W.3d at 529 (quoting *In re Est. of Looney*, 975 S.W.2d 508, 515 (Mo. App. S.D. 1998)). Here, none of the writings reference a promise by Mr. Fowler to reconvey the Farrenburg Farm and, again, Mrs. Kyle admitted at trial that said writings do not state the substance of the alleged agreement. As such, Mr. Fowler's writings and notes, introduced by Mrs. Kyle, do not satisfy the memorandum requirement under the statute of frauds.

III.  Mrs. Kyle did not satisfy the partial performance exception to the statute of frauds

The trial court also found the partial performance exception to the statute of frauds applies in this case. We disagree. "An oral contract is valid and enforceable, irrespective of the statute of frauds[,] when there is proof of partial performance in furtherance of the agreement." *Piazza v. Combs*, 226 S.W.3d 211, 222 (Mo. App. W.D. 2007) (quoting *Shumate v. Dugan*, 934 S.W.2d 589, 592 (Mo. App. S.D. 1996)). This

16

exception "should be exercised most sparingly[,]" and the terms of the oral contract must be supported by "clear, cogent, unequivocal and convincing testimony[.]" *Id.* (quoting *Shumate*, 934 S.W.2d at 592-93). "[R]elief will be denied if there is doubt as to whether there has been a meeting of the minds or full understanding of the terms sought to be enforced." *Johnson*, 167 S.W.3d at 263.

To meet the partial performance exception to the statute of frauds, three elements must be met:

> There must be proof: (1) of the performance of acts by the proponent which are cogent evidence of the existence of the pleaded contract; (2) *of the terms of the verbal contract by clear, cogent, unequivocal and convincing testimony*; and (3) that the acts, referred to in the first mentioned element, were done in reliance on the contract and that, as a result of the acts, the positions of the parties were so changed that to permit the other party to rely on the statute of frauds would result in a grossly unjust and deep-seated wrong, constituting fraud or something akin thereto, sometimes referred to as "virtual fraud, constructive fraud, or equitable fraud."

*Shumate*, 934 S.W.2d at 593 (emphasis added) (quoting *Pointer v. Ward*, 429 S.W.2d 269, 272-73 (Mo. 1968)). Thus, to have satisfied the partial performance exception, there must have been "clear, cogent, unequivocal, and convincing testimony" establishing the essential terms of the alleged agreement. *Id.*

Here, the trial court held that Mrs. Kyle satisfied the partial performance exception to the statute of frauds because (1) Mr. Fowler's writings and notes, introduced by Mrs. Kyle, showed that he partially performed the alleged contract by paying rent to Mr. and Mrs. Harrell, and (2) "[Mrs. Kyle] has testified to the contract terms." We

17

disagree, however, because Mrs. Kyle did not establish the essential terms of the alleged contract by "clear, cogent, unequivocal and convincing testimony."[10]

Mrs. Kyle, who was not privy to the alleged agreement made in 1984, testified that no writing exists specifying the exact amount of rent to be paid, how long such payments were to last, and in which Mr. Fowler promises to deed back Mrs. Harrell's interest in the Farrenburg Farm. While Mrs. Kyle testified that Mr. and Mrs. Harrell told her in 2016, 32 years after the making of the alleged agreement, that Mr. Fowler agreed to reconvey the Farrenburg Farm "when possible to do so," such testimony is not "clear, cogent, unequivocal and convincing" of the essential terms of an oral agreement. *See Johnson*, 167 S.W.3d at 263-64 (holding the partial performance exception did not apply where no definite date for performance was established with clear, cogent, unequivocal, and convincing testimony). Such testimony, at best, establishes the parties reserved the essential terms for future determination. *Fedynich*, 342 S.W.3d at 891-92.

Accordingly, Mrs. Kyle's Count V (Breach of Contract) is unenforceable under the statute of frauds. Appellant's Point IX is granted.

---

[10] For these same reasons, we are also not convinced the "perpetration of a fraud" exception applies, which requires the same elements as the partial performance exception. *Johnson*, 167 S.W.3d at 263 (citing *Lederle v. Lederle*, 916 S.W.2d 423, 428 (Mo. App. E.D. 1996)) ("Th[e] [perpetration of a fraud] exception requires the party seeking enforcement of the contract to prove, at a minimum: (1) the performance of acts which constitute cogent evidence of the existence of the contract; (2) the terms of the contract by means of clear, cogent, unequivocal and convincing testimony; and (3) such a change in the party's position as a result of the acts done in reliance on the contract that to permit the other party to avoid enforcement of the contract would result in a gross injustice.").

**Conclusion**

The trial court's judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

BECKY J. WEST, J. – CONCURS